KEELS *v.* MUTUAL RESERVE FUND LIFE ASS'N.

*(Circuit Court, D. South Carolina.* December 3, 1886.)

1. LIFE INSURANCE—SUICIDE—EVIDENCE—STATEMENT IN PROOFS.

    In an action on a life insurance policy, if there be a doubt whether the death of the insured was the result of accident or of suicide, the doubt should be solved in favor of the theory of accident; but if the plaintiff has, in her proof of death, stated that the death was by suicide, it is incumbent on her to satisfy the jury that she was mistaken in this statement, and that the death was caused by accident.

2. SAME—ACCIDENTAL KILLING.

    A condition in a life-insurance policy that it shall be void if the insured shall die by suicide, whether the act be voluntary or involuntary, does not apply where the death is the result of accident, or unintentional self-killing.

Motion for New Trial.

Action on a life insurance policy. Judgment for plaintiff. Defendant appealed. The facts are stated in the opinion.

*J. T. Sloan* and *Pope & Shand,* for plaintiff.

*J. T. Seibels,* for defendant.

SIMONTON, J. The action was on a policy upon the life of Isaac Keels in the sum of $10,000. The complaint set out the policy in general terms, stating the death, averring that it did not occur within any of the exceptions of the policy, and that all the conditions thereof had been complied with. The answer admitted the policy; set out its requirements that proof of death should be made fully and under oath; that such proof of death had been made, stating that suicide was the proximate cause of death, and that the remote cause was softening of the brain, inducing *dementia,* during which the suicide was committed. The answer relied upon the ninth condition of the policy, which is in these words. "Death of a member by his own hand, whether voluntary or involuntary, sane or insane, at the time, is not a risk assumed by the association in this contract." The answer had, as exhibits, the proofs of death, signed and sworn to by plaintiff; and the proceedings of the coroner's jury, with their verdict that Isaac Keels came to his end by suicide, which proceedings had been attached to the proof of death by the plaintiff. The reply of the plaintiff admitted that she had given suicide as the cause of death, but averred that this was on information, and not from personal knowledge; and also that she did not mean technical "suicide" by the use of this word.

The defendant moved the court to instruct the jury on the pleadings to find for defendant, as the proofs of death showed that the deceased had committed suicide,—one of the exceptions in the policy. This was overruled, and testimony was taken.

It appeared that Isaac Keels, whose life was insured, had, for over a year, been suffering from softening of the brain; that he showed great mental aberration, increasing in its character. On seventeenth January, 1886, being very much wrecked mentally and physically, and suffering from partial paralysis, he left his house about 2:30 P. M., walked to the back of his lot, returned through his pasture, and was found dead, with a bullet wound in his head, on the inner side of his pasture fence. This fence was 10 rails high, and it was evident that he had climbed over it before his death. His body was lying by the side of the fence, face downwards, a little on the right side, the head embedded in a hole in the ground, made apparently by the top of his head, a pistol being held in his open hand, under his body. The ball passed below the temple, ranged obliquely downwards, and was found lodged just at the juncture of the spine and the skull.

Each side presented requests to charge. The presiding judge adopted neither of them, but charged as follows:

(1) If the jury believe from the testimony that Isaac Keels came to his death by his own act,—shooting himself with the pistol,—and if, when he shot himself, he was either sane or insane, and so did the act intentionally or unintentionally, the plaintiff being bound by the condition expressed in the ninth article of the policy, cannot recover the full amount of it, and the verdict must be for the sum tendered by defendant. *Bigelow* v. *Insurance Co.*, 93 U. S. 284.

(2) If the jury believe from the testimony that Isaac Keels, in climbing his pasture fence, fell, and in the fall, or caused by the fall, the pistol exploded, and killed him, then the ninth condition of the policy cannot protect the defendant, and the jury may find the full sum secured by the policy.

(3) That, under ordinary circumstances, it is true that, if there be a doubt whether the death was the result of accident or of suicide, this doubt must be solved in favor of the theory of accident. *Mallory* v. *Insurance Co.*, 47 N. Y. 52. But in this particular case, plaintiff having in her proof of death stated to the company that the death was by suicide, it is incumbent on her to satisfy the jury that in this statement she was mistaken, and that the death was the result of accident. *Insurance Co.* v. *Newton*, 22 Wall. 38.

The jury found for the plaintiff the full amount claimed. The defendant now makes his motion for a new trial. The grounds upon which this motion is based may be stated thus:

(1) That the plaintiff in the proofs of death required by and submitted under the terms of the policy, having stated that the deceased came to his death by suicide, cannot now—certainly, in this action—give evidence of any other cause of death, or set up any other theory for the death; (2) because, if the deceased came to his death by a pistol in his own hand, this came within the ninth condition of the policy, and plaintiff cannot recover; (3) because the verdict is unsupported by the evidence.

The first ground gives to the proofs of death submitted when the claim is made an importance which they do not deserve. It is true

that the counsel for the defendant does not insist that the statements in the proof amount to an estoppel; but it is difficult to understand the proposition that the plaintiff cannot introduce evidence contradicting or explaining the statements in her proofs, unless she be estopped having made such statements. "Proofs of loss are not a part of the contract of insurance, nor a part of any contract. The contract of insurance requires that they shall be rendered, but it does not make them, when rendered, a part of itself, as sometimes an application for insurance is made. They are the act or declaration of one of the parties to a pre-existing contract, in attempted compliance with its conditions. The other party to the contract is not a party to this act or declaration, takes no part in making it, does not assent that it is a true statement, and is not bound thereby." *McMaster* v. *Insurance Co.*, 55 N. Y. 228.

The proofs of death give notice to the company that the life insured has terminated, and that a claim is made. They put the insurer upon the investigation. In such investigation he may be directed, but surely is not controlled, by the proofs. He can question them, contradict them, disprove them. Were we to hold that a claimant under a policy is irrevocably bound by statements of fact in the proof; that there is no room for the correction of mistakes,—corrections made upon after-discovered testimony, and more careful inquiry,—we would give to such proofs a character higher than is given to evidence offered upon a trial, and verdict thereon. All trial courts entertain motions to set aside findings of fact upon newly-discovered evidence.

It is a more difficult question, however, when we inquire if such evidence can be offered in the present action. Ought not this change of theory to have been submitted to defendant before action brought? Should not the proofs of death have been amended? The cases quoted by defendant, (*Campbell* v. *Charter Oak Co.*, 10 Allen, 218; *Irving* v. *Excelsior Ins. Co.*, 1 Bosw. 507; *Worsley* v. *Wood*, 6 T. R. 710,) certainly sustain this position. This rule, however, seems to be very strict, and should not be applied except to prevent the insurer from surprise or injury flowing from the acts of the plaintiff. The fact of death is communicated to the insurer. The question is made, did that death occur within the risks assumed? The proofs by the claimant are submitted early after the death, and on such information as can then be obtained. The insurer takes his own time. He examines the proofs, and makes his own investigation elsewhere,— gathers all the testimony he can. Is it just to deprive the claimant of any results favorable to him which such investigation may disclose? Suppose that the facts changing altogether the character of the death be discovered after action, or on the trial, in the unexpected disclosure by a witness under cross-examination, shall the claimant be deprived of this, and shall the jury be told to disregard it, and find against the truth?

The supreme court of the United States in *Insurance Co.* v. *Newton*, 22 Wall. 36, speaking of proofs of death in a policy, says:

"They were intended for the action of the company, and upon their truth the company had a right to rely. Unless corrected for mistake, the insured was bound by them. Good faith and fair dealing required that she should be held to representations deliberately made, until it was shown that they were made under a misapprehension of the facts, or in ignorance of material matters subsequently ascertained."

Referring to the cases quoted by defendant in the case at bar, and to their doctrine that, when a mistake has occurred in the preliminary proofs presented, and no corrected statement is furnished to the insurers before trial, the insured will not be allowed on the trial to show that the facts were different from those stated, the learned justice who delivers the opinion of the courts says:

"Possibly the rule there laid down is properly applicable only when the insurers have been prejudiced in their defense by relying on the statement contained in the proofs."

In the case at bar the presiding judge asked the attorney for the defendant if this change of theory in the cause of the death operated as a surprise to him, in which event a continuance would be granted. With a frankness to be commended he admitted that he was prepared for this defense.

In the case of *Insurance Co.* v. *Newton* the plaintiff was held bound by her proofs of loss "because no suggestion is made that these proofs do not truly state the manner of the death of the insured." The inference is a fair one that if some mistake could have been shown in the proofs, evidence of such mistake would have been admitted, although offered for the first time at the trial. See the cases of *McMaster* v. *Insurance Co.*, above quoted, and *Parmelee* v. *Insurance Co.*, 54 N. Y. 193, in which such evidence was admitted; Bliss, Ins. § 265, showing that the doctrine of the case in 10 Allen, *supra*, is not now followed.

I am of the opinion that the plaintiff in this action can show that the death was from some cause other than that stated in the proofs of death. At the most, the statement made in the proofs of death is an admission made by plaintiff, and, with all the other evidence, must be submitted to and be weighed by the jury. It meets the presumption that the death was accidental, and puts on her the burden of showing her mistake. And so the judge charged the jury.

2. We come now to the second ground, that, if the deceased came to his death by the pistol in his own hand, this is within the ninth exception in the policy. The words are, "death of a member by his own hand, sane or insane, voluntary or involuntary." The words "die by his own hand," in a provision for forfeiture in a life insurance policy, are synonymous with "commit suicide," "die by suicide." Bliss, Life Ins. § 228, and cases cited in note to *Breasted* v. *Farmers' L. & T. Co.*, 59 Amer. Dec. 488. Accidental or unintentional self-

killing is not within a condition forfeiting a policy for suicide, or taking one's own life, whether such death results from taking poison by mistake, supposing it a wholesome medicine, or from an act done in frenzy or delirium, as by leaping from a window, tearing off a bandage from an artery, or from an act done under the stress of overpowering force. In this all the authorities agree, whatever may be the opinion of particular courts as to whether or not a voluntary self-destruction resulting from insanity is within the condition. Id. 489; *Edwards* v. *Travelers' Life Ins. Co.*, 20 Fed. Rep. 661; *Pierce* v. *Insurance Co.*, 34 Wis. 389. If it were intended by this policy to include death by accident, it was easy enough to say so. The insurers frame their own contracts, and to suit themselves. They may, if they choose, insert express stipulations against accident. "If they prefer, for the purpose of getting custom, to omit such a stipulation, and to leave the matter in doubt, the doubt ought to be resolved against them."

3. With regard to the verdict. The facts were within the province of the jury. There was evidence to support the verdict. I see no reason for setting it aside on this ground.

The motion for a new trial is dismissed. Let the plaintiff enter his judgment in conformity with the verdict.