[NOTE. Respondent brought error, and the supreme court affirmed the judgment of the circuit court upon the grounds, as set forth in the opinion delivered by Mr. Justice Wayne, to wit: That the evident intention of the testatrix, as gathered from the will, was to manumit the slaves, as far as she had power by the Maryland law so to do; that such manumission was not in prejudice of creditors, within the Maryland statutes; that by the words of the will the debts became a charge upon the real estate after exhaustion of the personalty; that, the executor having permitted the slaves to go at large, his assent could not be recalled, nor could it be revoked under an order of the orphans' court for the sale of the testatrix's personal estate: and that it appearing that testatrix left sufficient real estate to pay all debts, without the sale of the manumitted slaves, they were entitled to their freedom, although there was a deficiency of personalty. Fenwick v. Chapman, 9 Pet. (34 U. S.) 461.]

---

**CHAPMAN (JAYCOX v.).** See Case No. 7,243.

**CHAPMAN (JOHNSON v.).** See Case No. 7,378.

---

## Case No. 2,605.

### CHAPMAN v. The LUCERNE.

[39 Hunt, Mer. Mag. 332.]

District Court, S. D. New York. 1858.

#### PILOTAGE.

[An abandoned bark towed from Norfolk to N·· · ·o k is not liable for the fees of a pilot who does not board her, nor exercise control or direction of her navigation.]

In admiralty.

Before BETTS, District Judge.

This suit was brought [by Daniel C. Chapman against the bark Lucerne] to recover the sum of $30.50, alleged to be due the libelant as pilotage. The bark, on a voyage from the coast of Africa to this port, put into Norfolk in distress, and was there abandoned by her owner to the underwriters. By their direction a steam-tug was sent from here to her, with a pilot and four seamen, to tow her to New York, the owner having no privity with that proceeding. The pilot who went did not go on board the bark at

all, but remained on board the tug, which towed the bark to this port, and for those services he brings this suit.

HELD BY THE COURT. That the bark being unnavigable and brought home solely by the power of the tug, was not in a condition bringing her within the provisions of the state statute under which the libelant claims. Laws 1857, c. 243, § 29. That the libelant, on the facts, was employed by the underwriters, and not by the owner or master of the bark; and that he performed no service to her, but remained on board the tug. Though told by the master of the tug off Barnegat to take charge of the bark, his charge only consisted in remaining on board the tug without having any control or direction of her navigation, and the libelant could not exercise in behalf of the bark, being towed as an inert body, his functions as pilot, nor even attempt to undertake them. That the libelant, upon the facts and law of the case, fails to establish any right of action against the bark. Libel dismissed with costs.

---

**CHAPMAN (PETTERSON v.).** See Case No. 11,042.

**CHAPMAN (READ v.).** See Case No. 11,605.

---

## Case No. 2,606.

### CHAPMAN v. REPUBLIC LIFE INS. CO.

[6 Biss. 238;[1] 4 Ins. Law J. 511; 7 Chi. Leg. News, 186; 5 Bigelow, Ins. Cas. 110.]

Circuit Court, N. D. Illinois. Nov., 1874.

INSURANCE—SUICIDE—INSANITY—"ACT"—"INTENTION."

1. It is competent for an insurance company to restrict its liability by a clause avoiding liability "in case of the death of the insured by his or her own act or intention, whether sane or insane," and in such case no degree of insanity will avoid the condition.

2. The words "act" and "intention" mean the same as the word "act" alone, for act implies intention.

This was an action at law [by Emeline L. Chapman] upon a policy of insurance issued by the defendant [the Republic Life Insurance Company], dated on the 23d day of July, 1873, whereby said company insured the life of Dennie Chapman in the sum of twenty-five hundred dollars, for the use and benefit of his wife, the plaintiff. The declaration was in the usual form, and alleged that the said Dennie Chapman, after the issue of the said policy of insurance, and while the same remained in force, to wit, on the sixteenth day of September, in the year 1873, died, and that due notice and proofs of death were furnished to the defendant, as required by said policy; and that the defendant, notwithstanding its said obligation and undertaking to pay said sum in the event

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

of the death of the said Dennie Chapman, had refused and did still refuse so to do. To this declaration the defendant pleaded among other pleas, that the said policy of insurance contained the following provision: "In case of the death of the said insured, by his or her own act or intention, whether sane or insane, or of death in consequence of the violation of law * * * then and in such case it is stipulated by all the parties in interest that the company shall not be liable for the sum insured," and averred that the death of said Dennie Chapman, mentioned in the said declaration, was caused by his own act and intention; that said death was caused and produced by a pistol-shot fired by the said Chapman into the head and face of him, the said Chapman, with the intention and for the purpose of then and there causing his own death. To this plea the plaintiff replied in substance, that at the time when the said Dennie Chapman came to his death, as stated in the said plea, he was mentally insane, and in consequence and by reason of such mental insanity, was wholly incapable of exercising any intention in reference to the act which caused his death, and that said deed was wholly the result of his mental insanity, and that he was impelled thereto without any volition of his own by an insane impulse which his mental and physical faculties were unable to resist, and that from his mental insanity he was wholly unable to comprehend the natural character, effect and consequence, of the act which resulted in his death.

To this replication the plaintiff demurred [raising thereby a question of law as to the effect to be given to the portion of the policy set out in the plea].[2]

Clarkson & Van Schaack, for plaintiff.

Bennett, Kretzinger & Veeder, for defendant.

BLODGETT, District Judge. It was contended on the part of the plaintiff that this case differed essentially from that of Bigelow v. Berkshire County Life Ins. Co. [unreported], decided by this court in favor of the defendant several months since, in this: That the policy in that case provided that "if the assured should die by his own act, sane or insane," the policy should become void, while in this policy the provision is "in case of the death of the insured by his or her own act and intention, whether sane or insane," the policy shall become inoperative. And much stress is laid by the plaintiff upon the interpolation of the word "intention" into this policy, which was not in the policy in the Bigelow Case.

To my mind, the use of the word "intention" in the policy before us, does not essentially vary or strengthen the legal meaning of the sentence from that of the policy in the Bigelow Case. The word "act" necessa-

rily implies intention, and it seems to me the policy in this case differs in no material import from the one already decided by this court; that is to say, you get just as strong a sentence, and it means practically just as much, to say that the company shall not be liable if the assured comes to his death by his own act. sane or insane, as if you say the company shall not be liable if the assured comes to his death by his own act and intention, sane or insane. The real question in this case is, what was the clause in question intended to protect the insurance company against, and was it lawful for it to so attempt to protect itself?

The supreme court of the United States, in Life Ins. Co. v. Terry, 15 Wall. [82 U. S.] 580, had construed the clause in a policy of life insurance, providing that the company should not be liable if the assured should die by his own hand, to mean, in effect, that if the insured being in the possession of his ordinary reasoning faculties, should from anger, pride, jealousy, or a desire to escape the ills of life, intentionally take his own life, there would be no liability; but, when the reasoning faculties of the assured were so far impaired that he was not able to comprehend the moral character, the general nature, consequences and effect of the act he was about to commit, or when he was impelled thereto by an insane impulse which he had not the power to resist, such death was not within the clause,, and the insurer was liable. Evidently with a view to guard itself against the effect of this decision, the defendant has resorted to the clause in question, avoiding its liability in cases of death by the hand of the assured, in cases where the suicide was committed while the insured was insane, as well as sane.

I have no doubt of the right of an insurance company to thus protect itself against liability. Certainly it is competent for an insurance company to say that it will not hold itself responsible for the acts of the insured when in a state of insanity; and the real question is,* can the court, with such a contract as this before us, attempt to measure the degree of insanity?

It is agreed by this contract, that the defendant shall not be liable for the death of the assured, by his own act, when insane. The plaintiff, by his replication, admits that the assured came to his death by his own act when in a state of insanity, but claims that because the insanity was so extreme and complete as to entirely overthrow the moral and mental faculties, therefore the defendant remains liable. Will the court attempt to measure the degree of insanity under which the assured was laboring at the time he took his own life? It seems to me not. It is enough for the purposes of relieving the defendant from liability on this contract, that the assured took his own life as is admitted by the pleadings. The degree of insanity makes no difference.

[2] [From 7 Chi. Leg. News, 186.]

There are but few adjudged cases bearing directly upon this question, the cause in this form being comparatively new. The one nearest in point is the case of Pierce v. Travelers' Ins. Co., 34 Wis. 389, where the language of the condition was that the company should not be liable if the assured died by a suicide, felonious or otherwise, sane or insane, and the court hold that the intention manifested by the words of the policy was so plain as to seem incapable of further explanation, and unless there was something in the policy of the law that forbids such a stipulation, the court had nothing to do but to give effect to the contract.

As the court in that case found nothing in the policy of the law forbidding such a stipulation, and as nothing is seen in this case or has been suggested, making it incompetent for the defendant to protect itself against the insane act of persons holding its policies, we think effect must be given to the condition, and the replication must be held to be bad. Demurrer sustained.

NOTE. To the same effect see Knickerbocker Life Ins. Co. v. Peters [42 Md. 414]. Where the provision in a policy was that it should be void "in case he (the insured) should die by his own hand. sane or insane," it was held that the words, "death by his own hand" had reference to the criminal self-destruction, and that the words "sane or insane" could have no further effect than to hold the policy void if the assured intended self-destruction while in a state of insanity, and not in case of death by accident. De Gogorza v. Knickerbocker Life Ins. Co. [65 N. Y. 232]. See, also, Bliss on Life Insurance, p. 393.