EARLY *v.* STANDARD LIFE & ACCIDENT INSURANCE CO.

ACCIDENT INSURANCE—EXCEPTED RISKS—DEATH BY POISON.

An exception in an accident policy of death or injuries result-
ing directly or indirectly from poison extends to cases where
the poison is administered through the mistake of a druggist
or physician.[1]

Error to Wayne; Carpenter, J. Submitted April 27,
1897. Decided May 25, 1897.

*Assumpsit* by Welthy A. Early against the Standard
Life & Accident Insurance Company on a policy of in-
surance. From a judgment for defendant on verdict
directed by the court, plaintiff brings error. Affirmed.

*George H. Prentis*, for appellant.

*Keena & Lightner*, for appellee.

LONG, C. J. This action is upon a policy of insurance
upon the life of Michael Early, the husband of the plain-
tiff. The policy was made payable to the plaintiff in case
of the death of the insured. It is undisputed that the
policy was to be in force from October 18, 1892, to Octo-
ber 18, 1893. It appears that on August 29, 1893, Michael
Early, feeling slightly unwell, went into a drug store in
Detroit, and asked the proprietor to give him something
to relieve the pain, and the proprietor, by mistake, gave
him some aqua ammonia. It burned his mouth very
severely, but he lived from that time to September 13,
1893 (some 15 days), when he died from the effects of the
potion taken. Due proofs of death were made, and the
defendant refused payment on the ground that the death
was caused by means specially excepted in the policy. It

---

[1] On the question what constitutes an accident within the mean-
ing of an insurance policy, there is an extensive note to *Fidelity &
Casualty Co.* v. *Johnson,* (Miss ) 30 L. R. A. 206.

was the contention of the plaintiff that death was caused by shock, and not by the poisonous substance. The court directed a verdict in favor of the defendant. Plaintiff brings error.

Counsel for plaintiff bases his contention upon the testimony of Dr. John J. Mulheron, who was called as a witness for plaintiff. He testified substantially that on August 29th he was called to attend the insured. He was asked:

"*Q.* What was his condition?

"*A.* I examined him, and found him suffering from a shock, and in a very weak condition of the pulse. On examining his mouth, I found that he had taken into it some irritant poison. His throat and mouth showed the effects of something of that nature. The irritation had extended to his lips, and they were also irritated. It was a burn such as would be caused by aqua ammonia, and the shock was what we would naturally expect from an irritant poison of that nature.

"*Q.* On the 13th of September, I think, he died?

"*A.* It was about that date.

"*Q.* From the effects of this shock?

"*A.* Yes; indirectly.

"*Q.* What, in your judgment, had he taken?

"*A.* Aqua ammonia.

"*Q.* In sufficient quantities to cause that trouble?

"*A.* Yes, sir."

To state the contention of counsel for plaintiff more specifically, it is that Mr. Early did not die from poison (that is, he was not poisoned), but died from the effects of the shock; that his whole nervous system was affected by the shock which he received when he found he had taken something he should not have taken, and that it was this that caused his death some time thereafter; that the aqua ammonia burned, and this produced the shock; that aqua ammonia is not what is considered by unprofessional persons as a poison; that his death was due to an accident, and not to poison.

The policy provides insurance "against the effect of injuries to the body caused by external, violent, and acci-

dental means, within the meaning of this policy, its agreements and conditions printed herein or on the back hereof." On the back of the policy it is provided that the policy is accepted subject to the following conditions:

"This insurance does not cover * * * disablement occasioned directly or indirectly by any natural illness, bodily infirmity, disease, or disorder, unless it can be proved to be the direct result of an accidental injury sustained after this policy shall have taken effect, nor injuries of which there is no visible mark upon the body, nor death nor injury resulting wholly or partly, directly or indirectly, from any of the following acts, causes, or conditions, or when affected by any such act, cause, or condition, or under its influence. * * * From any of the following causes: Intoxication, * * * poison, contact with poisonous substances," etc.

It is admitted on the part of the defendant that Mr. Early's death was caused by an accident (that is, that the taking of the aqua ammonia was accidental); and it is claimed, therefore, that the case is clearly within the exception to the policy which excludes from its terms death caused by accidental means resulting wholly or partly, directly or indirectly, from poison. It is further contended by counsel for defendant that the policy excepts death due to poison, without reference to how the poison causes the death, and without reference to any motive in the taking of it, or whether it is taken intentionally, voluntarily, or whether it is taken by oneself or administered by another person.

There can be no question, under the testimony in this case, that aqua ammonia is a poison. Dr. Mulheron expressly states it to be. The deceased, then, came to his death, in our opinion, by poison. It was accidentally administered, supposing it to be another substance. This could not take the case out of the exception, but rather brings it within the exception. The great weight of authority is in favor of the proposition that it is not necessary that the poison be taken with intent to produce death, in order to defeat a claim flowing from the right of membership.

In *Cole* v. *Insurance Co.*, 61 Law T. N. S. 227, the policy insured against injuries caused by accidental, external, and visible means, and provided that "this insurance shall not extend to death by suicide,  *  *  *  or to any injury or death arising from disease,  *  *  *  or by poison," etc.  It appeared that the insured, by accident, drank a poisonous mixture or liquid in mistake for medicine which he was in the habit of taking, and shortly afterwards died from the effects.  Verdict was directed for the defendant.  On motion for a new trial, Mr. Justice Mathew, speaking for the court, said:

"It is true that the policy in this case was intended to provide against accidental injury, but we must not treat that as all that the policy contains.  The terms of the provisos must be given their due effect."

After reciting the proviso above quoted, the learned justice said:

"This is a clear and intelligible phrase.  We are asked to insert after the word poison, 'unless accidentally taken or intentionally administered to the assured.'  The only case of death from poison which would then be left in which the company would not be liable is that in which the assured intentionally took poison; but that is covered by the proviso as to suicide."

It was held that the accident came within the proviso.

In *Pollock* v. *Mutual Accident Ass'n*, 102 Pa. St. 230 (48 Am. Rep. 204), the policy insured against injuries effected through external, violent, and accidental means, provided that it should not extend to any bodily injury of which there should be no external and visible sign, or to any bodily injury caused directly or indirectly by the taking of poison.  The insured, being present in a store where a salesman was offering for sale a sample of birch oil, and mistaking it for milk of birch, first tasted, then took a drink of, it, from the poisonous effects of which he died within 24 hours.  It was admitted, in a case stated, that the deceased mistook the birch oil for milk of birch, which he had been in the habit of drinking; it being a

harmless beverage, which closely resembled, in color, smell, and taste, birch oil. In an action by the beneficiary to recover the sum insured, it was held that the terms of the policy did not extend to that cause of death, and the judgment below was not disturbed.

In *Hill* v. *Insurance Co.*, 22 Hun, 187, the policy in suit was almost in the exact form as in the present case; but the words used in the exception read, "by the taking of poison," while the exception in the present one is "by poison" (that is, any death caused by poison). There it was held that the provision excepting from insurance a death caused "by the taking of poison" was not limited to cases of intentional self-poisoning, but included all cases in which the death was so caused. Cooke, Life Ins. § 56, lays down the same rule.

In *Batchelor* v. *Accident Ass'n*, reported in 34 Weekly Law Bulletin, page 239, published at Cincinnati, Ohio, the policy was in the exact form as in *Hill* v. *Insurance Co.*, *supra*. The insured died from an overdose of morphine. The case in the circuit court was ruled for the defendant, and on appeal to the supreme court the judgment was affirmed.

In *Paul* v. *Insurance Co.*, 112 N. Y. 472 (8 Am. St. Rep. 758), the court said:

"If the policy had said that it was not to extend to any death caused wholly or in part by gas, it would have expressed precisely what the appellant now says is meant by the present phrase, and there could have been no room for doubt or mistake."

We have not overlooked the cases of *Healey* v. *Mutual Accident Ass'n*, 133 Ill. 556 (23 Am. St. Rep. 637); *Mutual Accident Ass'n* v. *Tuggle*, 39.Ill. App. 509; and *Travelers' Ins. Co.* v. *Dunlap*, 160 Ill. 642. But in the present case the expression is, "death by poison." We know of no case which goes to the extent of holding that such an expression in the exception contained in the policy does not avoid it.

The court below properly held that no recovery could be had in the case.

The judgment is affirmed.

The other Justices concurred.