165 So. 195

### HEIMAN v. PAN AMERICAN LIFE INS. CO.

No. 32654.

March 4, 1935.

On Rehearing July 1, 1935.

On Second Rehearing Jan. 6, 1936.

H. W. Kaiser and J. H. Hammel, Jr., both of New Orleans, for appellant.

Eugene J. McGivney and Solomon S. Goldman, both of New Orleans, and John E. Fleury, of Gretna, for appellee.

BRUNOT, Justice.

The plaintiff is the beneficiary under two policies of insurance; one for $5,000, and one for $10,000. Both policies provide for double indemnity in the event of the insured's death by accidental means. The policies were in force less than two years when the death of the insured was caused by a pistol shot while the insured was, at the moment, alone in an automobile. The time the policies were in force is stated because they contain the following provision:

"*Self Destruction:*—In the event of self destruction within two years from the date of the issue of this policy, whether the insured be sane or insane, the insurance under the policy shall be a sum equal to the premiums thereon which may have been paid to and received by the Company, and no more."

The plaintiff sued for double indemnity. Exceptions of no right and no cause of action, leveled at the demand for double indemnity, were filed and referred to the merits; and the defense set up in the answer of the insurance company is a plea of suicide. The case was tried, and from a judgment in favor of the plaintiff for $415, the sum of the premiums paid by the insured, the plaintiff appealed.

The case was long-drawn out in the Civil district court. The record consists of many exhibits, and 827 pages of pleadings and oral testimony.

The issue in the case is whether, while the insured was handling a revolver, while alone, for the moment, in an automobile

that was parked in front of certain premises on a public highway, he committed suicide or was killed by the accidental·discharge of the revolver.

The defendant relies upon circumstantial evidence to prove its defense of suicide, and to prove a motive therefor. The rule is different as to the degree of proof necessary to prove suicide and that necessary to prove motive.

■ Where suicide is sought to be proved by circumstantial evidence, the evidence must be of that degree of certainty which will exclude every reasonable hypothesis of accidental death, but where proof of motive is essential to overcome the legal presumption against suicide, the burden is upon the pleader to establish motive by a fair preponderance of the evidence.

■ In the case at bar there were no eyewitnesses, and no suicide notes or previous declarations by the deceased. Under these circumstances, the law of this state was analyzed and accurately stated in the case of Webster v. New York Life Ins. Co., 160 La. 854, at page 877, 107 So. 599, 607. wherein the court said:

"We have shown, we think, that, in inquiring into the alleged suicide of a person deemed sane, where there is no direct evidence, as of eyewitnesses, suicide notes, or previous declarations, the physical surroundings, which almost always leave room for doubt as to accident or suicide, must be subordinated to the evidence as to motive. The reason is that, although·the physical evidence may show·unmistakably

that the deceased killed himself, nevertheless it does not usually show with the same certainty whether he did so intentionally or unintentionally, and hence that fact must be ascertained by inquiring whether the deceased had or had not some strong motive for taking his own life. In other words, the physical facts tend principally to show whether or not the deceased died by his own hand; whilst the evidence as to motive bears principally upon the intent of the deceased at the time he killed himself. If the deceased had no strong motive for taking his own life, the presumption would be that he did so accidentally; on the other hand, if he did have some strong motive for doing so, the inference naturally is that he did so intentionally."

The holdings of this court in Faulk v. Mutual Life Insurance Co., 160 La. 529, 107 So. 395, and in Andrews v. Provident Life & Accident Ins. Co., 179 La. 77, 153 So. 26, are to the same effect. The principle announced in these cases is in accord with the expressions of the text-writers and with the jurisprudence of every state in the Union.

Turning now to the facts, as established by a fair preponderance of the testimony in the record, we find that the deceased was a young man, mentally sound and in splendid physical health. His marital relations were ideal, and he was devoted to his children, who were minors of tender years. He had business reverses something more than a year before his death, but he had organized a new business which he was conducting advantageously

and with slowly increasing prosperity. On the day of his death he was on a country road, in an automobile, accompanied by an employee, and engaged in taking orders for goods, and in collecting for goods previously delivered to his customers. He stopped his automobile on the public highway in front of a stile, which was the approach to the abode of one of his patrons, and sent his employee to the house occupied by the patron for the purpose of making a collection. While the employee was on this mission, the deceased took a revolver from a pocket of the car and, by some unexplained means, a cartridge of the revolver was exploded, with the result that the bullet pierced his heart and killed him. His employee heard the report of the revolver and hastened to the car, but when he reached the scene the insured was dead. An inquest was held and the verdict was suicide, but the inquest was reopened, further testimony was heard, and the jury rendered a verdict of accidental homicide.

■ It is a well-recognized rule of law that the verdict of a coroner's jury is competent only to prove death. It is not even prima facie proof of the cause of death. The inquest in this case may therefore be dismissed without further comment.

■ On the other hand, the defendant proved that the deceased suffered reverses in his business about a year and a half before his death. That for a time thereafter he appeared morose and more or less downcast, and that he purchased the revolver which caused his death the morning of the day he was killed. Other testimony, all of which is based upon the theory that financial troubles caused the insured to voluntarily take his life, was offered by the defendant. In addition to what has already been said, the evidence offered by the plaintiff, in rebuttal, is direct proof that the deceased at the time of his death had comparatively no financial troubles; that his business, while small compared with the business he conducted before his failure, was successful and its future promising; that his demeanor was cheerful and contented; that he invariably carried a revolver in the pocket of his car on his trips in the country; that on a previous trip his revolver was stolen from the pocket of the car; that he purchased a secondhand revolver from a pawnshop just before leaving the city on the day he was killed, and was told by the seller that the revolver needed greasing, and that he did not know whether or not the revolver was defective. Proof was also offered showing a defect in the operation of the mechanism of the revolver. There was conflicting proof as to whether an oiled rag was in the car at the time the deceased was killed. Two witnesses testified that they saw the rag in the car. Other witnesses testified that they did not see the rag. It is a rule of law that negative testimony cannot outweigh positive testimony, especially where the witnesses are not impeached or otherwise discredited. The rag, and the testimony as to its location in the car, was offered as a circumstance tending to show that the insured was killed by the accidental discharge of the revolver while he was in the act of cleaning or greasing it.

■ It will serve no useful purpose to review in detail all of the testimony in the voluminous record. Suffice it to say that the evidence, as a whole, preponderates in favor of the conclusion that the death of the deceased was the result of the accidental discharge of a revolver while being handled by the deceased. Finding that the death of the insured was not caused by his voluntary act, and that the defendant has not proved, by a preponderance of the testimony, a motive for self-destruction, we now take up the exceptions of no cause of action and no right of action, as to the demand for double indemnity.

With respect to these exceptions, we cite Mrs. Regina Phillips v. Louisiana Equitable Life Insurance Co., 26 La.Ann. 404, 21 Am.Rep. 549; Brignac et al. v. Pacific Mut. Life Insurance Co. of California, 112 La. 574, 36 So. 595, 66 L.R.A. 322; Corpus Juris, vol. 1, pp. 425 and 444; Cooley's Briefs on Insurance (2d Ed.) vol. 6, pp. 5433, 5434, 5435 and the authorities cited thereunder; Ruling Case Law, vol. 5, p. 3781; 39 A.L.R. 1092, et seq.; Joyce on Insurance (2d Ed.) vol. 6, p. 6183; Penfold v. Universal Life Ins. Co., 85 N.Y. 317, 321, 39 Am.Rep. 660, and Parker v. New York Life Ins. Co., 188 N.C. 403, 125 S.E. 6, 39 A.L.R. 1085. We think these authorities are conclusive of the plaintiff's right to double indemnity.

For the reasons assigned, the judgment appealed from is avoided and reversed, and it is now ordered, adjudged, and decreed that there be, and judgment is hereby rendered in favor of the plaintiff and against the defendant for the sum of $30,000.00, with interest thereon, and costs, as prayed for in the plaintiff's petition.

## On Rehearing.

LAND, Justice.

This suit is upon two policies, one for $10,000 and the other for $5,000 for a natural death, and upon a rider attached to each policy providing for payment of double the amount of the face of the policies (or total additional sum of $15,000) for death resulting from purely accidental means, but excepting any coverage from: (1) Death resulting by self-destruction; and (2) among other specified clauses, from death resulting from "bodily injury inflicted by the insured himself."

The total claim for a natural death, and for death by accidental means, is $30,000.

In our original opinion we reached the conclusion from the evidence, as a whole, that the death of the insured was not caused by his voluntary act, but was the result of the accidental discharge of a revolver while being handled by him, and that defendant had not proved, by a preponderance of the testimony, a motive for self-destruction.

We have not been convinced by the reargument of the case on rehearing that our conclusions should be changed as to the facts of the case as found in our original opinion.

But we are satisfied that we erred in allowing plaintiff the double indemnity claimed.

While the policy provides for the payment of a double indemnity for death re-

sulting from purely accidental means, it excepts coverage from death resulting from bodily injury inflicted by the insured himself, at all events.

The fact that the death of the insured did not result from self-destruction merely entitles his beneficiary to recover for a natural death, but not for a double indemnity, which, under the terms of policies, includes a coverage for the death of the insured, incurred in consequence of bodily injuries effected solely from external, violent, and accidental means, of which there is a visible contusion or wound, but death from bodily injury inflicted by the insured himself is not a risk assumed.

The policies sued upon do not purport to insure against death resulting from all injuries effected by accidental means. There are a number of cases of death which are expressly excluded in these policies, such as death from self-destruction, whether sane or insane, death from poison or gas, or from bodily injury inflicted by the insured himself, or intentionally by another person.

In all the cases cited below in this opinion, exceptions have been sustained and double indemnity denied, whether death resulting from poison or gas was accidental or intentional, and where "shooting self-inflicted" also happened by chance. Ferris v. Southern Surety Co., 157 La. 909, 103 So. 259; Urian v. Scranton Life Ins. Co., 310 Pa. 144, 165 A. 21; Lemmon v. Massachusetts Prot. Ass'n, Inc. (D.C.) 53 F. (2d) 255; McGlother v. Provident Mut. Acc. Co. (C.C.A.) 89 F. 685; Richardson v. Travelers' Ins. Co. (C.C.) 46 F. 843;

Early v. Standard Life & Acc. Ins. Co., 113 Mich. 58, 71 N.W. 500, 67 Am.St.Rep. 445.

It is therefore ordered that the original judgment herein rendered be set aside, and judgment is hereby rendered in favor of plaintiff and against defendant for the sum of $15,000, the face of the policies for a natural death, with legal interest thereon from judicial demand, reserving plaintiff's right to apply for rehearing.

FOURNET and BRUNOT, JJ., concur in part, but dissent from the denial of double indemnity.

On Second Rehearing.

ROGERS, Justice.

The Pan American Life Insurance Company, of New Orleans, under two policies aggregating $15,000, insured Meyer Heiman against death. Attached to each policy was a rider providing for double indemnity in the event the insured's death occurred through accidental means. Heiman died within two years after the policies were issued; his death resulting from a shot from a revolver, which was discharged while he was sitting alone in an automobile.

Mrs. Zena Heiman, the widow of the insured and the named beneficiary, brought this suit on the policies, claiming the double indemnity therein stipulated. Defendant excepted to the claim for double indemnity as disclosing no right or cause of action. The exception was referred to the merits, and defendant answered, denying liability on the ground that the insured had

committed suicide. The district court sustained the defendant's plea of suicide, and gave plaintiff judgment for only $415, the amount of the premiums paid by the insured. Plaintiff appealed. On the original hearing of the appeal, this court held that insured's death was accidental and not suicidal, and gave plaintiff judgment for the double indemnity claimed. On a rehearing of the case, the court adhered to its conclusion as to the facts found in its original opinion and awarded plaintiff judgment for the face value of the policies, rejecting her claim for double indemnity. Plaintiff then applied for a rehearing, alleging that the court erred in denying her double indemnity and in failing to allow her the costs of suit. Plaintiff's application for a rehearing was granted and the case is before us for further consideration, restricted, however, to the two grounds on which plaintiff's application is based.

The riders covering the double indemnity contain a general promise on the part of the insurer to pay the beneficiary double the face value of the policies, subject, however, to certain exceptions of nonliability, which are enumerated. Among the exceptions is one exempting the insurer from liability where. the death of the insured results from "bodily injury inflicted by the insured himself, or intentionally by another person."

Defendant contends that there is no coverage under the quoted clause where the insured's death results from self-inflicted injuries, whether intentional or unintentional. Per contra, plaintiff contends that the exemption relied on by defendant does

not apply where the insured's death results from bodily injury unintentionally inflicted by the insured himself.

Our conclusion is that plaintiff's construction of the insurance contract is more reasonable than that of the defendant, particularly in view of the well-established rule requiring the courts to construe such contractual provisions strongly against the insurer.

It is the universal rule that provisions in life and accident insurance policies exempting the insurer from liability if the insured commits suicide or dies by his own hand or act do not protect the insurer when the insured dies as the result of injury inflicted upon himself by accident or mistake. Cooley's Briefs on Insurance (2d Ed.) vol. 6, pp. 3435, 5433, 5434, and authorities cited; Couch's Cyclopedia of Insurance Law, vol. 6, p. 4647, and authorities cited; 1 Corpus Juris, p. 444; Joyce on Insurance (2d Ed.) vol. 4, p. 4418; Richard's Law of Insurance (4th Ed.) p. 638, and authorities cited.

"A clause in a life insurance policy reading, 'If I die by own hand or act, voluntary or involuntary, sane or insane,' is a mere ordinary suicide clause, and is not violated by an act done without suicidal intent." Brignac v. Pacific Mutual Life Ins. Co., 112 La. 574, 36 So. 595, 66 L.R.A. 322. See, also, Kling v. Masons' Fraternal Accident Association, 104 La. 763, 766, 29 So. 332; Phillips v. Louisiana Equitable Life Ins. Co., 26 La.Ann. 404, 405, 21 Am.Rep. 549.

The defendant insurance company recognized this well-established rule for in-

terpreting life and accident insurance policies in issuing the policies under review, by expressly excluding from coverage death by suicide. The first exemption mentioned in the second paragraph of the double indemnity stipulation, which enumerates the exemptions, is the one exempting the insurer from liability in the event the death of the insured results from "self-destruction, whether sane or insane," from which it is clear that the provision limiting the insurer's liability where the death of the insured results "from bodily injury inflicted by the insured himself, or intentionally by another person," refers to death which is purely accidental and not to death which is the result of the insured's intent to commit suicide.

The question then arises whether the plaintiff can enforce the double indemnity provision of the insurance contract where the insured died from an injury causing a visible wound, when the injury was unintentionally inflicted upon himself by the insured as the result of carelessness or negligence in handling his revolver.

In the first place, we cannot believe that by expressing the exemption in the manner stated, the parties intended to exempt the risk that the insured might die of unintentional injuries inflicted upon himself. Any other construction of the policy provision would make it practically worthless to most of the policyholders. It rarely happens that an accidental injury or death results otherwise than from the negligent or careless act of the person injured or killed. Test that statement by illustrations, viz.:

A person may slip in his bath tub and fracture his skull; an automobile driver to avoid striking a pedestrian may swerve into a tree or other obstacle and injure himself; a swimmer unknowingly may dive into shallow water and break his neck; a hunter may trip, causing his gun to explode and wound him; a person in reaching for a package on a shelf may knock a pistol off the shelf, causing a bullet to strike him in the heart; a person may dash hurriedly across a street and run into an automobile and injure himself; a person may trip on a sidewalk and strike his head; all accidental injuries resulting in death. If the contention of the defendant insurance company is correct, all those accidents and hundreds of other accidents which readily suggest themselves are not protected by the insurance contract. Even where an insured is fatally injured by the act of some other person it frequently happens that the act of the insured himself contributes to the accident. Under the contention of the defendant insurance company, all such accidents would be excluded from the benefits of the policy contract.

In the next place the word "inflicted" necessarily implies action involving exercise of the will. It was so held in Jefferson Standard Life Insurance Co. v. Myers (Tex.Com.App.) 284 S.W. 216, 217. There the question arose on the contention of the insurer that the double indemnity clause did not specifically apply where death resulted from bodily injury inflicted by another person. The court held that the exemption pleaded extended only to intentional injuries to the insured, and there-

fore not to shooting by an insane person, who was incapable of exercising any intention. In passing on the question presented, the court exhaustively discussed the question of an insurer's exemption from liability under a double indemnity clause for death due to bodily injury inflicted by another person. Among other things, the court said:

"In the first place, it must be conceded (Accident Insurance Co. v. Crandal, 120 U.S. 527, 7 S.Ct. 685, 30 L.Ed. 740) that when one 'inflicts' injury, he 'acts.' He must do something. In Webster's New International Dictionary, we are told this word comes from the Latin words meaning 'to strike.' This dictionary then goes on to say that it means 'to give, or produce by striking * * * pain,' etc.

"Consequently, it seems clear that the words here used are the same in effect as if the provision had exempted the company from liability for double indemnity where the injury resulted from 'the act' of another person. If this be true, then it is interesting to see what is involved, legally speaking, in the meaning of the word 'act.' It seems clear that, in the absence of language expressing a contrary meaning, an 'act' involves an exercise of the will. It signifies something done voluntarily. It necessarily implies intention. We find these statements abundantly sustained by the text-writers and decisions of our courts. For instance, the following: Webster's New International Dictionary defines 'act' as follows:

"'Jurisprudence is concerned only with outward acts. * * * The essential elements of such acts are three, viz., an exertion of the will, an accompanying state of consciousness, a manifestation of the will.'

"We are told in Words and Phrases [Vol. 1, First Series, p. 116] that—

"'An act signifies something done voluntarily by a person. An act is the result of the exercise of the will.'

"The same author tells us that, as used in an insurance policy restricting liability in case of death of insured by his own 'act,' the word implies an 'intention.'

"Black's Law Dictionary, 1891 Edition, p. 20, defines 'act' as follows:

"'In its most general sense this noun signifies something done voluntarily by a person, the exercise of an individual power; and an effect produced in the external world by exercise of the power of a person objectively, prompted by intention and proximately caused by a motion of the will.'

"1 Corpus Juris, p. 912, defines 'act' as follows:

"'In a more technical sense the word signifies something done voluntarily by a person, or in other words, the result of exercise of the will.'

"In Chapman v. Republic Life Insurance Co., 5 Fed.Cas. p. 481, No. 2,606, 6 Biss. 238, the court said: 'The word "act" necessarily implies intention. * * *'

"In the case of Randle v. Birmingham Railway, Light & Power Co., 169 Ala. 314, 53 So. 918, the Supreme Court of Alabama says:

"An act 'denotes affirmative action or performance, and an expression of will or purpose.' * * *

"In writing contracts, words are to be construed in their legal sense. The practically uniform holding that an 'act' done involves intention, unless the contrary is specified, is particularly true of insurance contracts. For instance, in the case of Mutual Life Insurance Co. v. Terry, 82 U.S. (15 Wall.) 580, 21 L.Ed. 236, the insured died 'by his own hand.' He drank poison therefrom. The policy provided that if the insured should 'die by his own hand,' the company would not be liable. It will be readily observed that, physically speaking, he did die by his own hand. This cannot be questioned. But, mentally speaking, he did not do so. He was insane. The Supreme Court of the United States, with only one dissenting justice, held the company liable in spite of this provision in the contract. The court said the insured must intentionally take his life before the company can escape liability."

Similarly, in the case of Phillips v. Louisiana Equitable Life Ins. Co., 26 La.Ann. 404, 21 Am.Rep. 549, hereinabove referred to, this court held that the defense of suicide would not avail under an excepted liability, "if the insured should die by his own hands." The court declared that the common intent of the parties was to exempt the insurer from liability only for the voluntary destruction of the insured by whatever means accomplished, and that since the insured was insane when he killed himself, no responsibility attached to his act.

As pointed out in Jefferson Standard Life Ins. Co. v. Myers (Tex.Com.App.) 284 S.W. 216, at page 218, this same rule has been applied by the United States Supreme Court to a purely accident policy. In the case of Accident Insurance Company of North America v. Crandal, 120 U.S. 527, 7 S.Ct. 685, 30 L.Ed. 740, the insured had an accident policy only. He hanged himself while temporarily insane. The company denied liability on the ground that, under the terms of the policy, it was not liable where the death was by "suicide or self-inflicted injuries." But the court, in a unanimous opinion, held the company liable.

The reasoning of the court in Jefferson Standard Life Ins. Co. v. Myers is sound and is amply supported not only by the text-writers and judicial decisions mentioned in the opinion, but also by the many text-writers and numerous decisions of the courts cited by plaintiff in her brief. We think the reasoning is peculiarly appropriate to this case. If exemption from liability under a double indemnity clause for death due to bodily injury inflicted by another person extends to intentional injuries, we cannot see how it can be successfully contended that exemption from a double indemnity clause for death due to bodily injury inflicted by the insured himself (meaning self-killing through accident or mistake) can be extended to unintentional injuries. This statement appears to be sustained by the rule set forth in Corpus Juris, p. 444, as follows:

"A provision against liability in case of self-inflicted injuries applies only to inten-

tional injuries, and does not protect the insurer when the injury, although inflicted upon himself by insured, was the result of carelessness or negligence, without intention."

Defendant, in support of its contention, relies mainly on the following cases, viz.: Ferris v. Southern Surety Co., 157 La. 909, 103 So. 259; Richardson v. Travelers' Ins. Co. (C.C.) 46 F. 843; Early v. Standard Life & Acc. Ins. Co., 113 Mich. 58, 71 N. W. 500, 67 Am.St.Rep. 445; McGlother v. Provident Mut. Acc. Co. (C.C.A.) 89 F. 685; Urian v. Scranton Life Ins. Co., 310 Pa. 144, 165 A. 21; Lemmon v. Massachusetts Prot. Ass'n, Inc. (D.C.) 53 F.(2d) 255; Pollock v. United States Mut. Acc. Ass'n, 102 Pa. 230, 231, 48 Am.Rep. 204.

With the exception of Lemmon v. Massachusetts Prot. Ass'n, Inc., none of the cited cases are inconsistent with the rule announced by the text-writers and decisions we have hereinabove mentioned.

An examination of the cited cases discloses that the language of the exemptions construed therein was not precisely the same as the language of the exemption relied on as a defense in this case. In all the cases the exemptions presented for judicial interpretation contained the words "directly or indirectly in whole or in part." Thus:

In Ferris v. Southern Surety Co., the policy excluded from coverage injuries or death resulting wholly or in part, directly or indirectly, from or while or in consequence of being affected by gas.

In Early v. Standard Life & Acc. Ins. Co., the exception in the policy provided against death caused by accidental means resulting wholly or partly, directly or indirectly from poison.

In Urian v. Scranton Life Ins. Co., the policy provided that the death benefit should not be claimed or paid if the death of the insured resulted directly or indirectly, in whole or in part, from poisoning. The court, in its opinion, pointed out the difference between the language used in the policy death "from poisoning" and death "from taking poison," and clearly intimated that if the latter language had been used in the policy it would have reached a different conclusion.

In McGlother v. Provident Mut. Acc. Co., the exemption in the policy was from death from poison.

In Pollock v. United States Mut. Acc. Ass'n, the policy insured against injuries effected through external, violent, and accidental means, and provided that its terms should extend to any bodily injury of which there should be no external or visible sign, or to any bodily injury caused directly or indirectly by the taking of poison.

Richardson v. Travelers' Ins. Co. was decided in 1891, by a United States Circuit Judge in Illinois. The policy presented for his interpretation provided that it should not cover death resulting wholly or partly, directly or indirectly, from taking poison, contact with poisonous substances, or inhaling gas. No cases are cited in support of the opinion, which is based on the author's conclusion that the language of the policy was so clear as to require no construction. The only case mentioned

in the opinion is Paul v. Travelers' Insurance Co., 112 N.Y. 472, 20 N.E. 347, 3 L.R.A. 443, 8 Am.St.Rep. 758, of which more hereafter, with the reasoning in which the author of the opinion expressed his dissatisfaction.

The decision in Lemmon v. Massachusetts Prot. Ass'n, Inc., was by a judge of a United States District Court in Oklahoma. The decision reflects nothing more than the personal opinion of the judge who rendered it. The only authorities cited relate solely to the well-established rule that parties to an insurance contract may contract for what accidents and risks the insurer shall or shall not be liable for; that such a contract must be construed according to the plain and popular meaning of the terms used; and that it is the duty of the courts to enforce the contract as actually made by the parties; all of which are so well-settled that they are not even debatable. The decision has no controlling or persuasive force.

A leading case on the question under review here is that of Paul v. Travelers' Insurance Co., 112 N.Y. 472, 20 N.E. 347, 3 L.R.A. 443, 8 Am.St.Rep. 758. There the policy provided that its provisions should not extend to death caused by "inhaling gas." The court held that the language was ambiguous and must be construed to mean the voluntary inhalation, and not the inhalation during sleep. In its opinion, the court observed that if the policy had stated it was not to extend to any death caused wholly or in part by gas it would have expressed precisely what the insurer contended was meant by the phrase and there could have been no room for doubt or mistake. Here, similarly, if the defendant company had worded its policies so as to effect the purpose for which it now contends the plaintiff would have no particular cause for complaint. Just as it inserted in the exemption covering self-destruction, the words "whether sane or insane"; in the exemption relating to diseases, the words "directly or indirectly"; in the exemption covering taking of poison or inhaling gas, the words "whether voluntary or otherwise," the defendant company could have inserted the words "intentionally or unintentionally" in the exemption which it herein relies on to escape liability.

But as to this particular exemption, the insurer left the meaning open and in doubt. Construction is required. The universal rule in such cases is that the contract must be construed most favorably for the insured. Under that rule we are compelled to the view that before the defendant can escape liability under the indemnity clause in dispute, it must appear that the injury inflicted by the insured upon himself was intentionally inflicted. The insured, as we have found, in shooting himself, did not exercise any intention. The injury from which he died was unintentionally self-inflicted. Our conclusion is, therefore, that under the terms of its policy the defendant insurance company is liable for the double indemnity claimed by the plaintiff.

The conclusion which we have reached on further consideration of the question presented disposes of plaintiff's complaint

as to the court costs, which must follow the judgment.

For the reasons assigned, our original decree herein entered and filed on March 4, 1935, is reinstated and made the final judgment of this court.

LAND, J., dissents.

ODOM, J., dissents, being of the opinion that the opinion on first rehearing should be reinstated.