Frank **JAMESON** and Hazel Jameson Cole, Plaintiffs-Appellees,

v.

The **MUTUAL LIFE INSURANCE COMPANY OF NEW YORK**, Defendant-Appellant.

No. 27320.

United States Court of Appeals Fifth Circuit.

July 31, 1969.

**1018**

Larry M. Lesh, Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., for appellant.

Ernest L. Sample, Beaumont, Tex., for appellees.

Before WISDOM and CARSWELL, Circuit Judges, and ROBERTS, District Judge.

CARSWELL, Circuit Judge:

Prone as the law is to see that full insurance benefits are paid to beneficiaries without much tolerance for quibbling over the syntax of exclusionary clauses, there are, nonetheless, instances where the insurers' writers make their words so plain and their meaning so clear that a demand for double indemnity can be resisted. Such a case is this.

The subject life insurance policies named the appellees as beneficiaries and provided for double indemnity for accidental death with certain express exclusions. The crucial words here are: "* * *, the Company does not assume risk of death caused or contributed to, directly or indirectly, *by * * * gunshot or pistol wounds unless inflicted by a person other than the insured. * * *"* (Emphasis added.)

The insured shot and killed himself on November 22, 1964, while placing a load-ed pistol in his pocket. All parties stipulate that the death was accidental.

The insurer paid the normal benefits but refused to pay on the double indemnity feature of the policy relying upon the stated exclusion. The present litigation ensued.

The district court construed the subject exclusion as applying only to wounds intentionally inflicted by the insured and, since the insured's death was accidental, held that the exclusion did not apply. The insurer was ordered to pay the double indemnity. The court further held that the insurer had not discriminated illegally by issuing other policies without this exclusion but at similar rates.

We affirm the district court's holding on the issue of discrimination between classes of insureds but reverse its construction of the "gunshot wound" exclusion.

The issues in this case are governed by the law of the State of Louisiana. The district court, exercising its diversity jurisdiction, sat in Texas. Texas' conflict of laws rule holds that insurance contracts are governed and are to be construed under the law of the state where they are made absent certain special circumstances which are not applicable here. Bostrom v. Seguros Tepeyac, 225 F.Supp. 222, 228–229 (N.D.Tex. 1963).

Louisiana, like most states, follows the general rule of strict construction of exclusions in insurance contracts. This requires that any ambiguity be construed against the insurer. Hendricks v. American Employers Insurance Company, 176 So.2d 827, 830 (La.App. 2nd Cir. 1965). However, this rule of construction has its limitations. As expressed by the Louisiana Supreme Court in Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72, 75 (1939):

"'* * * contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear

and unambiguous, their terms are to be taken and understood in their plain, ordinary and popular sense. The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties, and embodying requirements, compliance with which is made the condition to liability thereon.' "

■ The controverted "gunshot wound" exclusion clause is clear and unambiguous and does not support the interpretation proffered by the appellees and the district court. The policies simply exclude *all* death from "gunshot or pistol wounds" from the double indemnity feature of the policy *"unless* [such wounds are] inflicted by a person other than the insured."

The district court based its construction of the clause upon the case of Heiman v. Pan American Life Insurance Company, 183 La. 1045, 165 So. 195, 200 (1935), which held that the word " 'inflicted' necessarily implies action involving exercise of the will." While this construction of the word "inflict" is supported by the case law of many jurisdictions,[1] it does not and cannot be rationally used to alter the clear and unambiguous meaning of the exclusion. Moreover, the exclusion clause in *Heiman,* supra, was materially and grammatically different from that of the present case. The *Heiman* clause excluded double indemnity if death resulted from "bodily injury *inflicted by the insured himself,* or intentionally by another person." 165 So. at 199 (emphasis supplied). The insured in *Heiman* died of an accidental gunshot wound.

In *Heiman* the word "inflicted" was construed as it applied to the *exclusion* itself. In the present case the word "inflict", with its implication of volition, can only be properly read, in both the grammatical and legal sense, to apply to the *exception* to the exclusion, " * * * *unless inflicted* by a person other than the insured," which is irrelevant here since the insured died by his own hand.

In order to construe this clause as appellees would have us do requires a tortuous two step process of reasoning. First, must be added the words "self-inflicted" to the exclusion thus modifying it to read *"self-inflicted* gunshot or pistol wound, * * *." And next, relying on *Heiman,* hold that the exclusion as modified actually means *"intentionally self-inflicted* gunshot or pistol wound, * * *." The appellees thus argue that because the "unless" clause of the exclusion refers to inflicted wounds, the entire sentence impliedly refers to such wounds. To read an exclusion of "gunshot or pistol wounds * * *" as an exclusion only of intentionally inflicted wounds merely because an *exception to the exclusion* contains the word inflict is indeed strained. We are unable to find any authority in law or the rules of grammatical construction for this double act of implication. Such fallacious reasoning represents "a perversion of language" and an "exercise of inventive powers for the purpose of creating an ambiguity where none exists. * * *" Muse v. Metropolitan Life Ins. Co., supra.

■ Since it was stipulated that the exclusion was included due to the number of suicides by firearms, the district court reasoned that "the court must conclude that the only reason the gunshot exclusion was included was to avoid liability when the wound was self-inflicted." This contravenes a rule of contract construction which is more often honored in its breach than in its ob-

1. Accident Insurance Co. v. Crandal, 120 U.S. 527, 7 S.Ct. 685, 30 L.Ed. 140 (1886) ; Jefferson Standard Life Insurance Co. v. Myers, 284 S.W. 216, 217 (Tex.Com.App.1926) ; Randle v. Birmingham Railway, Light & Power Co., 169 Ala. 314, 53 So. 918 (1910).

servance. All provisions of an insurance contract should be read together and construed according to the plain meaning of the words involved, in order to avoid ambiguity while at the same time seeking to give effect and meaning to all portions of the policy.[2] An interpretation which gives a reasonable meaning to all provisions is preferable to one which leaves a portion of the policy useless, inexplicable or creates surplusage. Williston on Contracts, 3rd Ed., §§ 618, 619. In concluding that the purpose of the clause was to avoid payment for deaths resulting from intentionally self-inflicted gunshot or pistol wounds, the district court failed to consider the fact that the policy contained an earlier specifically stated exclusion of the risk of death by "self-destruction, sane or insane." The appellees' interpretation and construction would result in a duplication of an already existing policy provision. Such constructions are to be avoided insofar as the interests of justice will allow. A closer analysis of the nature of suicide offers a more plausible explanation for the inclusion of and specific wording of the "gunshot wound" exclusion. As pointed out by the appellant, considering the strong legal presumption against suicide, the high incident of suicide by guns, the problem of proof and the fact that most such suicides are unwitnessed, it is not difficult to understand the appellant's desire and right to remove from coverage completely all deaths by "gunshot or pistol wound, unless inflicted by a person other than the insured." [3]

The issue of discrimination between classes of insured was resolved in favor of the insurer by the district court. Appellees did not assign the ruling as error on a cross appeal but instead present the issue of discrimination as a "defense" to appellant's interpretation of the exclusionary clause. This point was not pressed upon oral argument. Nevertheless, in the interest of a complete disposition of this cause we feel compelled to state our affirmance of the district court's finding of non-discrimination.

Appellees argue that enforcement of the exclusion would result in unlawful discrimination between policy holders of a mutual company in violation of Louisiana law.

The anti-discrimination statutes of Louisiana, 22 La.Rev.Stat., §§ 752, 1214, prohibit only unfair discrimination between individuals of the same class. Appellee insureds' policies were "Z" class policies authorized by the company for issuance from January 1, 1948 to September 5, 1951. Form 48–301 was authorized for use with class "Z" policies during this same period and contained the double indemnity feature with the exclusion discussed above. This double indemnity provision had an established reserve and a 2.25% interest factor. Dividends have been paid in each year since 1950 on this form.

From January 1, 1964 through December 31, 1966 the company authorized accidental death benefit rider Form 64303 for use in connection with the Company's "D" Series class of policy. Form 64303 had a premium, dividend and reserve structure which differed from Form 48–301 and did not pay dividends. In addition Form 64303 had more liberal benefits including the exclusion of the "gunshot wound" clause and extension of coverage from age 65 to 70. The Company stipulated that rates for Form 64303 were "reduced in recognition of

---

2. Hemel v. State Farm Mutual Auto Ins. Co., 211 La. 85, 29 So.2d 483 (1947); Georgia S. & F. Ry. Co. v. United States Casualty Co., 177 F.Supp. 751, 757 (M.D. Ga., 1959), affirmed 272 F.2d 712 (5th Cir. 1960).

3. The difficulties faced by insurance companies in proving suicide in gunshot cases have long been recognized. See Clemmer's

Administrator v. Jefferson Standard Life Ins. Co., 9 F.Supp. 115, 121 (D.C.Va. 1934) rev'd. 79 F.2d 724, 103 A.L.R. 171 (4th Cir. 1935); Cosmopolitan Life Ins. Ass'n. v. Koegel, 104 Va. 619, 52 S.E. 166, 171–172 (1905) (circumstances must exclude any hypothesis of death by accident); Metropolitan Life Ins. Co. v. Kennedy, 55 Ga.App. 554, 190 S.E. 873 (1937), (presumption against suicide).

recent favorable experience and because of the omission of the future dividends. * * *"

■ The Louisiana anti-discrimination statute provides that "* * * in determining the class, consideration may be given to the nature of the risk, plan of insurance, the actual or expected expense of conducting the business or any other relevant factor." 22 La.Rev.Stat. § 1214, subd. A(7). In light of the above statute and the stipulation concerning the difference in premium, dividend and reserve structure of the two forms, the district court was clearly correct in finding that there was no unfair discrimination.

Affirmed in part and reversed in part. Judgment for the appellees in the court below is vacated and this case is remanded for the entry of judgment for the appellant.