The action involves collection of $1,000 life insurance policy on the life of Roger L. Parker, husband of the plaintiff, who died 29 January, 1923, within a year from the issuance of said policy. The defendant denied liability, and in defense set up a provision contained in the policy which reads as follows:
"Self-destruction: In the event of self-destruction during the first two insurance years, whether the insured be sane or insane, the insurance *Page 404 
under this policy shall be a sum equal to the premiums thereon, which have been paid to and received by the company."
The court submitted the following issue to the jury, which was answered by them in the negative: "Did the insured, Roger L. Parker, die by his own hand or act with intent to commit suicide?"
The court below charged the jury, in part, as follows: "It is alleged that R. L. Parker, the insured, died on the 29th of January, 1923; that prior to his death he had paid the premium on this policy of insurance, and that after his death in January, 1923, the plaintiff furnished the defendant with proof of his death. The defendant admits the execution of the policy, the payment of the premium, the death of Roger L. Parker, and the furnishing of proof of his death, but it alleges there was a clause in this policy of insurance as follows (the court read said clause as above set forth). So that, gentlemen, the only question presented to you under the pleadings in this case is embraced in the issue which I have submitted, `did the insured, Roger L. Parker, die by his own hand or act with intent to commit suicide?' And upon the issue the burden is upon the defendant, the Insurance Company, to satisfy you by the greater weight of the evidence that he shot himself with a pistol with intent to take his own life. It is admitted that he died from the result of a pistol shot, and the sole question for you is whether this evidence satisfies you by its greater weight that he shot himself intentionally. If the evidence satisfied you that he shot himself accidentally, then you would answer the issue `No.' Unless you are so satisfied, however, by the greater weight of the evidence, the burden being upon the defendant, that he intentionally shot himself and died as a result of the wound inflicted, then your answer to the issue would be `Yes.' The desire for life is so great in all mankind, there is no presumption that a man commits suicide, and the person who alleges that he committed suicide may show by greater weight of the evidence that he intentionally killed himself, and if he does not satisfy the jury by the greater weight of the evidence, then it is the duty of the jury to answer the issue `No.'"
The defendant tendered the issue "Did the insured cause or produce his own self-destruction?" The court below refused to submit the issue, and submitted the one set forth in the charge above.
In Thaxton v. Ins. Co., 143 N.C. p. 36, an issue like the one submitted in the instant case was held not to be error. Hoke, J. (now C.J.) said:
"Again the charge of the court is urged for error in connection with the second issue, the issue being in form as follows: `Did the insured die by his own act or hand with intent to commit suicide?' The policy, bearing date of 18 June, 1904, contains a condition that if the insured, *Page 405 
within one year from the issue of the policy, die by his own act or hand, whether sane or insane, the company shall not be liable for any greater sum than the premiums, etc. A condition of this kind is held to be a valid stipulation. Spruill v. Ins. Co., 120 N.C. p. 141; Vance on Insurance, p. 532. And it is generally held also that such a provision, in its terms, refers to suicide and does not include a killing by accident, even although the act of the insured may have been the unintended means of causing death. Vance on Insurance, supra. The issue was, therefore, properly framed: `Did he die by his own hand with intent to commit suicide?' It is also accepted doctrine that on such an issue addressed to this question, the presumption is against the act of suicide, and the burden is on the party who seeks to establish it. Am. and Eng. Ency., vol. I, p. 331; Vance on Insurance, p. 532; Lawson's Law of Presumptive Evidence, p. 241; Spruill v. Ins. Co.,supra; Mallory v. Ins. Co., 47 N.Y., p. 52."
In Hay v. Insurance Co., 168 N.C. p. 88, the issue was as in the case at bar: "The only issue in controversy upon the second trial was the following: `Did the insured die by his own hand or act with intent to commit suicide?' which was answered in favor of the plaintiff, and the only exceptions seriously debated are to the charge of his Honor instructing the jury that the burden was upon the defendant to prove by the greater weight of the evidence that the deceased committed suicide, and to the refusal to charge the jury to answer the issue `Yes' if they believed the evidence. In our opinion, there is no error in either ruling. When an insurance company seeks to avoid payment of a policy on account of suicide, the burden of the issue is on the defendant (Thaxton v. Ins. Co., 143 N.C. p. 37), and the `weight of the evidence must be with the party who has the burden of proof, or else he cannot succeed.' Chaffin v. Mfg. Co., 135 N.C. 100. The evidence as to suicide was circumstantial, and while sufficient to justify and answer to the issue in favor of the defendant, it was not conclusive, and the inference of an accidental killing could be accepted."
In Wharton v. Ins. Co., 178 N.C. p. 136 (This case was tried also by the learned and conscientious judge who tried the present case), the insurance company set up the same defense in that case as in the instant case. The policy of insurance contained the same clause: "In event of self-destruction during the first two years, whether the insured be sane or insane, the insurance under this policy shall be a sum equal to the premiums thereon which has been paid to and received by the company and no more." The court, in that case, said: "It can serve no purpose to elaborate the testimony for there was evidence tending to sustain the theory that the death was caused by an accident, and the burden of proof was upon the defendant to establish its allegation that the death was *Page 406 
deliberate self-destruction. The function of the jury was to determine the fact. The burden of proof being on the defendant to prove its defense, the court could not adjudge that an affirmative defense is proven, for that involves the credibility of the witnesses, which is a matter for the jury.Spruill v. Ins. Co., 120 N.C. 141, and numerous citations therein in Anno. Ed. Besides, there was evidence to go to the jury that the death of the deceased was accidental."
The same issue was submitted in Kinsey v. Ins. Co., 181 N.C. p. 478, as in the present case. In that case the jury found for the defendant, and on appeal this Court found no error.
All the evidence introduced, both by plaintiff and defendant, shows that the case was fought out on the theory whether Roger L. Parker destroyed himself by committing suicide or he accidentally killed himself. There was no evidence as to insanity. We think the issue was a proper one, under the language of the policy, and the facts in the case.
The defendant contends: "The Court can readily see that the term `suicide" is wholly inconsistent with the provisions of this policy, because in this policy it is provided that whether the insured `be sane or insane,' and an insane person could not commit self-murder, mental derangement would be a complete defense against self-murder or suicide, while under the terms of this policy and the decisions of the Court, the purpose of the defendant was to protect itself from any liability which might produce the insured's own self-destruction, whether he be sane or insane."
In Union Mut. Life Ins. Co. v. Payne, 105 Fed. Rep., p. 178, it is said: "If it occurred by suicide, whether the insured was sane or insane, the plaintiffs could not recover on the policy. If it occurred by accident or by assassination, the defendant is liable on the policy. Accidental or unintentional self-killing does not forfeit a policy for suicide. `Self-destruction,' as used in the contract of insurance here in question, means suicide, and does not include accidental self-killing. May on Ins. (2d ed.), sec. 207; Breasted v. Trust Co., 59 Am. Dec., 489, and note, sec. 3. The insurers frame their own contracts, and, when they choose, they may insert express stipulations against accident. `If they prefer, for the purpose of getting custom, to omit such a stipulation, and to leave the matter in doubt, the doubt ought to be resolved against them.' Keels v.Association (C. C.), 29 Fed., 201." Clarke v. Equitable Life Assur. Soc. (U.S.), 118 Fed., 374.
We do not think that the language in the policy is clear enough to be construed as meaning that self-destruction included accidental killing, but the reasonable and righteous interpretation of the clause in the policy is that self-destruction meant suicide, whether the insured be sane or insane. Under the language of the policy, accidental killing *Page 407 
would not be so construed as to mean self-destruction, such as would avoid the policy. If the defendant so intended, how easily it could have been written in the policy, "Self-destruction: In the event of self-destruction (which includes accidental killing of one's self) during the first two insurance years, whether the insured be sane or insane, the insurance under this policy shall be a sum equal to the premiums thereon which have been paid to and received by the company."
We said, in Allgood v. Ins. Co., 186 N.C. p. 420
(30 A.L.R., p. 652): "The language of the rider is ambiguous and not clear. The rider, on its face, indicates it was a form prepared by defendant. If the defendant intended that the automobile should be `locked when leaving same unattended,' it could have said so in plain language. The defendant, no doubt, has men skilled to draw its insurance policies and riders. The rider could have been drawn in simple language, well understood by all; for example, `The insured undertakes, during the currency of this policy, to always lock the automobile when unattended.' `While we should protect the companies against all unjust claims, and enforce all reasonable regulations necessary for their protection, we must not forget that the primary object of all insurance is to insure.' Grabbs v. Ins. Co., 125 N.C. 399."
We have examined the exceptions and assignments of error made by defendant with care, and can see no error in them.
There was some evidence to go to the jury — slight, but sufficient — that the injury was accidental. This was a question for the jury.
From the entire record we can find no error in law.
No error.