GAINES *v.* SUN LIFE ASSURANCE COMPANY OF CANADA.

1. INSURANCE—LIFE POLICY—DISABILITY BENEFITS—EXTENDED
    COVERAGE—NONPAYMENT OF PREMIUMS.
    Under clause of life insurance policy granting certain benefits
    in case of total disability occurring before default in pay-
    ment of premiums, the extended term of disability insurance
    upon nonpayment of premium being apart from the extended
    term of the insurance, the liability of insurer for disability
    benefits ended upon nonpayment of premiums prior to·expira-
    tion of period of grace.

2. SAME—DISABILITY BENEFITS—INTOXICATING LIQUORS—DRUGS—
    EVIDENCE OF DISABILITY.
    A physician who had income from the practice of his profession
    during. and after the year of default in payment of premiums
    on his life insurance policies containing disability benefit pro-
    visions was not entitled to benefits thereunder where he was not
    mentally incompetent ·except while intoxicated or under the
    influence of drugs, such condition not evidencing total and
    permanent disability. occasioned by bodily injury or disease.

3. SAME—INCOMPETENCY—INTOXICATING LIQUORS—DRUGS—PREMI-
    UMS—NOTICE OF DISABILITY.
    Incompetency due merely to drunkenness or drug addiction
    does not excuse one insured under a life insurance policy from
    payment of premiums nor from giving notice of total and
    permanent disability so as to entitle him to disability. benefits
    thereunder.

4. DRUNKARDS—INSANE PERSONS—INCOMPETENCY.
    A drunkard is not an incompetent, like an idiot, or one generally
    insane, but is simply incompetent when his understanding is
    clouded or his reason dethroned by actual intoxication.

5. WORDS AND PHRASES—DISEASE.
    Disease is defined as an alteration in the state of the human
    body or of some of its organs or parts interrupting or dis-

turbing the performance of the vital functions, or of a particular instance or case of this.

6. INSURANCE—DISABILITY BENEFITS—FORFEITURE NOTICE—DRUNKENNESS—EVIDENCE.

Failure to make claim for disability benefit while life insurance policies were in full force and effect as well as to make payment of premiums under the policies barred action for disability benefits after occurrence of forfeiture, provided for in the policies, where proofs fail to show insured was in a state of ebriety during whole of period in which claim should have been made. ·

7. SAME—DISABILITY BENEFITS—DRUNKARDS—EVIDENCE.

Testimony showing insured was a drunkard and drug addict and thereby lost much of his medical practice but which failed to show any bodily injury or disease within the terms of disability benefit provisions of life insurance policies was insufficient to permit recovery of disability benefits by insured's guardian.

8. EVIDENCE—JUDICIAL NOTICE—INTOXICATING LIQUORS—DRUNKARDS.

It is common knowledge and the warning is evident that indulgence in intoxicating liquors, unless restrained within reasonable bounds by the partaker, leads to excessive indulgence and one need not be warned that, if continued, the craving for alcoholic liquor may lead to habitual drunkenness and the unfortunate self-imposed consequences.

Appeal from Wayne; Elliott (Philip), J., presiding. Submitted June 16, 1943. (Docket No. 49, Calendar No. 42,408.) Decided September 7, 1943. Rehearing denied October 15, 1943. Certiorari denied by Supreme Court of the United States March 28, 1944.

Assumpsit by John W. Gaines, guardian of the estate of Claude B. Gaines, a spendthrift mentally incompetent person, against Sun Life Assurance Company of Canada, a foreign corporation, for disability benefits on two insurance policies. Verdict and judgment for plaintiff. Defendant appeals. Plaintiff cross-appeals. Reversed without a new trial.

*Love & Miel*, for plaintiff.

*Walters & Head*, for defendant.

Wiest, J. Plaintiff, as guardian of Claude B. Gaines, brought this action to recover disability benefits under two identical life and indemnity policies, issued by defendant to his ward; one on February 7, 1928, for $10,000, and the other on March 3, 1928, for $15,000, and upon trial by jury had verdict and judgment for $27,400.83. Defendant reviews by appeal, and plaintiff by cross-appeal seeks a new trial if the judgment is reversed.

At the time the insurance policies were issued the assured was a physician in the city of Detroit, specializing in eye, ear, nose and throat diseases, and had a lucrative practice which continued until he became a drunkard and drug addict. The policies provided total and permanent disability benefits as follows:

"At any time after the first premium shall have been paid, and before default in the payment of any subsequent premium, if the assured shall furnish due proof to the company at its head office in Montreal that he has become totally and permanently disabled by bodily injury or disease, and that such disability occurred while this policy is in full force and before the anniversary of the policy on which the assured's age at nearest birthday is sixty years, the company will grant the following benefits:—

"1. Waiver of Premiums.—The company will pay for the assured the subsequent premiums, if any, as they shall become due during the period of such total and permanent disability, commencing with the first premium due after receipt of said proof of such disability. * * *

"Disability shall be deemed to be total within the meaning hereof whenever the assured becomes so

disabled by bodily injury or disease that he is pre-
vented thereby from performing any work for com-
pensation or profit or from following any gainful
occupation, and under this contract such total dis-
ability shall be presumed to be permanent when it
is present and has existed continuously for not less
than three months."

The insured paid the premiums to and including
those due February 7 and March 3, 1934. But pre-
miums on the policies on February 7 and March 3,
1935, were not paid. Nor were any premiums paid
thereafter.

It is the claim of the defendant that upon default
in payment of the premiums the policies became ex-
tended term insurance without disability benefits
and the indemnity under one of the policies expired
October 7, 1935, and the other expired on Novem-
ber 3, 1935.

Plaintiff claims that default in payment of the
premiums was occasioned by the mental incompe-
tency of the assured and that he was thereby totally
disabled from attending to the matter, and also
claims that the policies did not become extended
term insurance without disability benefits, but did
become extended term insurance with disability
benefits.

This calls for consideration of the terms of the
policies on this subject. We are of the opinion that
the extended term of disability insurance upon non-
payment of the premium was apart from the ex-
tended term of the insurance and ended the liability
of the defendant for disability benefits under one
policy on March 9, 1935, and the other on April 2,
1935.

Plaintiff contends that the time was extended or
at least defendant is barred from pressing the point
mentioned because the plaintiff herein, brother of

the assured, went to the local office of the insurance company in September, 1935, and gave notice of the disability of the assured and he wanted to file a claim for permanent and total disability of the assured and was informed that the disability benefits had expired and was refused blanks upon which to make a claim. At the time of this alleged conversation the disability benefit provision was no longer in force.

Defendant presents the following question:

"Should an insured, who, because he was frequently drunk and used drugs to excess, failed to file proofs establishing total and permanent disability prior to the lapse in March and April, 1935, of the disability benefit provisions due to the nonpayment of premiums, be held excused from filing proofs on the theory that he was mentally incompetent to do so?"

The record shows that the insured had an income from his practice in 1928, of $8,385; in 1929, $18,022; in 1930, $14,350; in 1931, $7,843.80; in 1932, $7,269.50; in 1933, $4,328.39. The income for 1934, 1935, and 1936 was not shown because the books were unavailable but counsel for plaintiff stated the absence of such records did not indicate there was no income for those years. The assured also had income from his professional work in 1937, 1938, and 1939. At the time the assured made default in payment of the premiums on the two policies he was not mentally incompetent, nor suffering total disability by reason of disease or injury, except, possibly, at the times when he was drunk or under the influence of drugs. The incompetency of the assured, occasioned by drunkenness and the use of drugs, did not furnish proper evidence of total and permanent disability occasioned by bodily injury or disease; nor

was it any excuse for his failure to pay the premiums due in February and March, 1935. It appears from the record that while his practice was less by reason of his intemperate habits, yet he continued the practice of his profession and had some income therefrom during the years 1935, 1936, and 1937.

The indemnity provision of one policy expired March 9, 1935, and the other April 2, 1935, and both by reason of nonpayment of premiums and also for want of notice of the claimed disability of the assured. But, it is said that the assured was mentally incompetent and thereby excused from giving the notice of disability. He was a drunkard and drug addict and, like any other such person, was at times incoherent, irritable, depressed and slovenly, but no more than drunk or befogged by drugs, and was not mentally incompetent, except during periods when alcohol or drugs, at his desire, had control of his mental faculties. There is no such thing as latent inebriety.

In *Wright* v. *Fisher,* 65 Mich. 275, 284 (8 Am. St. Rep. 886), this court held:

"A drunkard is not an incompetent, like an idiot, or one generally insane. He is simply incompetent upon proof that, at the time of the act, his understanding was clouded, or his reason dethroned, by actual intoxication. *Peck* v. *Cary,* 27 N. Y. 9 (84 Am. Dec. 220); *Gardner* v. *Gardner,* 22 Wend. (N. Y.) 526 (34 Am. Dec. 340); *Van Wyck* v. *Brasher,* 81 N. Y. 260." Cited with approval in *Somers* v. *Ferris,* 182 Mich. 393; *Burns* v. *Misura,* 228 Mich. 152.

In *Bailey* v. *Life Ins. Co. of Virginia,* 222 N. C. 716 (24 S. E. [2d] 614), the plaintiff by reason of indulgence in intoxicating liquors was incapacitated

from carrying on his law business and he sought indemnity benefit under a policy to all intents and purposes identical with the one in suit here. The court stated:

"The language of the policy under consideration clearly states that 'disability shall be considered total whenever the insured becomes disabled by bodily injury or disease so that he is wholly prevented thereby from engaging in any occupation or performing any work for compensation or profit.' It is not contended that plaintiff is disabled by reason of bodily injury. Therefore, is his disability the result of 'disease'? 'Disease' has been defined as 'an alteration in the state of the human body * * * or of some of its organs or parts interrupting or disturbing the performance of the vital functions, or of a particular instance or case of this.' * * *

"When, under the above rule of construction, these definitions are applied to the facts of the case in hand, the evidence fails to show that plaintiff's disability is the result of disease, as the term is understood in its plain, ordinary and popular sense. While there is evidence that plaintiff has for many years been highly nervous and has drunk whiskey to excess, for which he has taken treatment at several places, the evidence shows there is nothing organically wrong with him."

The court affirmed a nonsuit of the plaintiff.

The proofs in the case at bar fail to establish that the assured was in a state of ebriety during the whole period he should have made claim for indemnity benefit under the policy. For his failure to make claim, as well as his failure to pay the premium under the plain terms of the policies, the forfeiture, provided for therein, occurred and bars his action. See *Galloway* v. *United States,* 319 U. S. 372 (63 Sup. Ct. 1077, 87 L. Ed. 1458).

Testimony showing the assured was a drunkard and drug addict and thereby lost much of his medical practice was introduced by plaintiff but failed to show any bodily injury or disease within the plain terms of the indemnity contract in the policies.

Plaintiff cites *New England Mutual Life Ins. Co.* v. *Hurst,* 174 Md. 596 (199 Atl. 822), in support of his contention that: "Regardless of whether there was a pre-existing disease, the chronic alcoholism in itself, as distinguished from acute alcoholism, is clearly a disease." In that case the contract of insurance provided:

"Upon receipt of due proof that insured has become physically or mentally incapacitated so as to be wholly and permanently unable to engage in any occupation or profession or to perform any work whatsoever for compensation, gain, or profit, and that such disability has occurred while the policy and this agreement are in full force.   *   *   *   This provision   *   *   *   shall not be effective if the disability of the insured shall result from self-inflicted injury or from any aerial or submarine casualty."

The court stated (pp. 601, 602, 615):

"The testimony on the record tends to show that some years after the writing of the policies of insurance the plaintiff began to drink, immoderately, intoxicating liquor. The habit continued until he became a dipsomaniac.   *   *   *

"As was expressed by the distinguished doctors who attended the plaintiff, chronic alcoholism is a disease which results after the continued abuse of drinking alcoholic liquor gives rise to an uncontrolled craving or desire which is accompanied by the lack of judgment, will power, and moral fibre on the part of the victim to combat the craving. The diagnosis was that the plaintiff was afflicted

with this disease, and its coincident secondary physical nervous and mental effects; and the prognosis was that he would not recover. &ast; &ast; &ast;

"There is no evidence on the record legally sufficient for the jury to find that the chronic alcoholism of the assured is the result of his conscious purpose or design. See *Globe Indemnity Co.* v. *Reinhart,* 152 Md. 439, 456–458 (137 Atl. 43). On the contrary the testimony tends to show that he had vainly exercised his will to restrain and control his desire. The result of his disease is a weakness of will and of character which causes him to yield to the temptation of an overmastering appetite for intoxicating liquor. The drinking in the first stages was voluntary, but there is no testimony that the drinker was then aware of the latent danger in his habit, and so, while his consumption of alcoholic beverages was a voluntary act, yet his ignorance of its insidious effect does not make the act a voluntary exposure of himself to the unapprehended and unexpected danger of the disease of chronic alcoholism. The *result* of the indulgence of an appetite does not necessarily determine that the result was self-inflicted, because, if the actor does not apprehend or is ignorant of the danger of his act, he may not be held to have voluntarily inflicted upon himself its consequences. Since the plaintiff here does not appear to have had conscious knowledge of the danger that his drinking might develop from a harmless indulgence into the baneful disease of chronic alcoholism, the disease may not be said to have been self-inflicted. If the evidence on this subject were such that reasonable men might differ upon whether or not the chronic alcoholism of the plaintiff was self-inflicted, the question of intent would have been an issue for the jury. In our judgment there was no ground to submit the question to the jury."

It will be noted that the indemnity provisions of the insurance contract in that case differ from those

in the case at bar.  We are not impressed by the reasoning of the court that it must appear to the insured that the drinking of intoxicating liquor might develop from harmless indulgence into a baneful disease of chronic alcoholism.  It is common knowledge and the warning is evident that indulgence in intoxicating liquors, unless restrained within reasonable bounds by the partaker, leads to excessive indulgence and one need not be warned that, if continued, the craving for alcoholic liquor may lead to habitual drunkenness and the unfortunate self-imposed consequences.  We think the better reasoning is found in *Bailey* v. *Life Ins. Co. of Virginia, supra,* and more in line with our decisions upon the subject of mental incompetency of one who drinks intoxicating liquors to excess.

Despondency following the death of his wife in July, 1933, may have intensified his indulgence in alcoholic liquor and drugs but that method of drowning his grief was clearly intentional and, as a medical man, he must have been aware of the consequences upon his professional work and income therefrom.  It does not lay with plaintiff now to say the disability of the assured by reason of indulging in alcoholic liquors and drugs was not an issue at the trial, for it was presented by the claim and proofs offered by plaintiff in behalf of his right to have recovery.

Under the evidence the court should have directed a verdict at the close of plaintiff's proofs as requested by defendant.  The judgment is reversed and no new trial granted as requested by plaintiff.  Defendant will recover costs.

BOYLES, C. J., and CHANDLER, NORTH, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.