## Lynch, Appellant, *v.* Mutual Life Insurance Company of New York.

Argued April 11, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*George F. Taylor,* with him *Alter, Wright & Barron,* for appellant.

*William H. Eckert,* with him *Smith, Buchanan & Ingersoll* and *Louis W. Dawson,* for appellee.

OPINION BY RENO, J., October 1, 1946:

These appeals required us to study the case of a chronic alcoholic and to determine whether his total and permanent disability was a self-inflicted injury.

Two life insurance policies issued by defendant to Allen G. Lynch designated his wife, Anna B. Lynch, as the beneficiary, and provided for waiver of premiums and payment of monthly benefits should he become totally and permanently disabled. Total disability is defined as "any impairment of mind or body which continuously renders it impossible for the Insured to follow a gainful occupation", and the policies provide: "Disability benefits shall not be granted if disability is the result of self-inflicted injury."

The beneficiary brought actions of assumpsit upon the policies which were tried without a jury. The trial judge found for the defendant, and, upon exceptions, his findings of fact and conclusions of law were sustained by the court en banc. The beneficiary appealed.

It was for the judge to assay the evidence and resolve its conflicts, and his findings approved by the court en banc are binding upon us to the extent that they are supported by the testimony. He found that the insured has been totally and permanently disabled within the meaning of the policies since July 23, 1942, that the disability resulted from chronic alcoholism, and was self-inflicted.

The insured is about forty-three years old, a graduate of the law school of the University of Pittsburgh, and a member of the Bar since 1926. He was a superior student, and a prosperous lawyer until the middle of 1942 when he discontinued his practice, although he collected a $2500 fee in October of that year, which fee was divided with another lawyer. He was married to the beneficiary in 1931, but was separated from her in January 1940.

He was reared in a religious family, and in his youth received the usual parental admonitions regarding the dangers involved in the use of intoxicating liquors. Although he had drunk liquor before, "he began to drink to excess about 1937 and has been frequently and repeatedly intoxicated since that time, although not con-

tinuously so." During 1940, 1941, and 1942 he was treated in various hospitals and in a sanitarium for alcoholism. Since October, 1943, he has lived on a farm in Butler County, and is alone there except when the owner of the farm spends his week-ends with him. He prepares his own meals and takes care of the livestock. Whether he still drinks does not appear, and neither side called him as a witness.

Physicians were called as experts by both parties, and they differed widely and fundamentally upon the insured's condition and the general theme whether chronic alcoholism is a disease or a habit and a self-inflicted injury. The physicians agreed that there is no material impairment of insured's body as a result of drink, but they differed as to the impairment of his mind. Appellant's witness found his will impaired; appellee's witnesses found his mind normal and his will unaffected. A medical witness for appellant testified that if the insured *would* abstain from liquor he could recover his health, and appellee's witness testified that the insured *could* abstain. The learned hearing judge made no specific finding upon the subject, but his discussion indicates that, without deciding whether excessive drinking is a disease or a habit, he accepted the testimony which pronounced chronic alcoholism a self-inflicted injury. There is testimony which supports that view. One physician testified directly that the condition is produced by voluntary action and is, therefore, self-inflicted, and that while the will is impaired "during the time that he is under the influence of alcohol, . . . his mind can be brought back without alcohol to function normally." Another doctor who examined the insured in 1940 testified that he could then abstain from alcoholic beverages, and stated: "My opinion is that alcoholism is a self-inflicted condition and chronic alcoholism differs in no way from acute alcoholism in that it is done volitionally by the individual."

Appellant builds her argument around the contention that "self-inflicted injury" must be construed as though

it read "wilful or wanton self inflicted injury", and that appellee, upon which rested the burden of proof, failed to show that the injury was so inflicted. Of course, we cannot add these words to the plain language of the policy which appellant concedes is unambiguous. *Quigley v. West. and South. Life Ins. Co.*, 136 Pa. Superior Ct. 27, 7 A. 2d 70. Still, if intent and wantonness inhere in "self-inflicted injury", the phrase must be construed to require proof of the presence of those elements. Unquestionably, an injury is self-inflicted only when the insured wills or intends it; an accidental injury producing total and permanent disability, although self-inflicted, as where a man innocently drinks poison from a bottle improperly labeled a harmless medicine, would not bar recovery. Wantonness, considered as the mental state of one whose behavior injures himself, means that he acts knowing or having reason to know of facts which would lead him to realize that his conduct creates an unreasonable risk of bodily harm and a high probability that substantial harm will result to himself. Cf. Restatement, Torts, §500.

The medical testimony merely translates into scientific terms the age-old experience and observation of mankind. The act of drinking consummates the intention to experience the effects of drink. It is sheer folly to suppose that the intent goes no further than to engage in "the manual operation", to borrow appellant's phrase, by which the contents of a glass are transferred to the mouth. Man drinks because he desires, intends, wills to experience the effects of the drink. He drinks water to slake his thirst; milk for taste and nutriment; tea, coffee and other mild beverages for refreshment or slight stimulation. He also drinks spirits for their taste and effect. He drinks for a purpose, to achieve a result, be it only to secure mild relaxation in the society of agreeable companions. He may intend more, he may drink to relieve his feeling of inadequacy, to subdue his anxieties, to bolster his courage, to drown his sorrow, "to forget his

poverty and remember his misery no more" (Proverbs, 31:7),—but whatever the motivation, he is consciously seeking a result, an effect which he knows liquor will produce for him. He intends the result.

Conceding that men do not deliberately intend to become chronic alcoholics, what shall be said of a man who, knowing the ultimate results, seeks the accumulative effects which liquor produces? All men, especially drink addicts, know only too well the baneful and inevitable consequences of intemperate and unrestrained indulgence in drink. Stress has been laid upon the evidence in this record of parental warnings. But without them, this insured, an intelligent man with wide experience as a lawyer, knew what all men have known from the beginning. In spite of it, he continued to drink, he sought regularly the effects of liquor, and now that liquor has produced the ultimate result it must be said that the final outcome was of his own choosing. The evidence abundantly shows that he discovered his vulnerability long before he eventually succumbed. The only rational explanation of his conduct is that, knowing its natural and probable consequences, he nevertheless deliberately chose to subject his mind and body to a risk of substantial harm. His drinking was intentional and, since he could forecast the ensuing harm, it was wanton, and self-inflicted. So, adopting arguendo the construction for which appellant contends, there can be no recovery.

Nor will the terms of the policies minus the construction urged by appellant support a recovery, and this appellant apparently concedes. The plain and literal meaning of the policies is that they provide protection against the insured's misfortunes, not his misdeeds. A misdeed differs from a misfortune in its character as a personal decision, a self-commitment, wilful identification of one's self with what is harmful. There is no specific finding that the will of the insured was impaired. If it was, and this perhaps may be implied in the gen-

eral finding of total and permanent disability, even that infirmity was self-imposed. Long ago a wise judge observed: "they may pass into that state [intoxication] when they will": LOWRIE, C. J., in *Keenan v. Com.*, 44 Pa. 55, 58 (1863). Law rests upon the postulate that men normally have capacity to choose between alternatives, that they possess a free will, and that they are responsible for the consequences of its exercise. Intoxication may indeed be involuntary, as where another by duress or fraud induces one to drink; but generally it is voluntarily produced, "they may pass into that state when they will"; and the law excuses no one for his acts while voluntarily intoxicated save where the law requires a specific intent as a constituent of a crime. 4 Blackstone 25. If a sane man chooses to loose destructive forces upon himself the law will not relieve him from his folly. Neither he nor those claiming under him can profit by a self-inflicted injury. Cf. *Elwood v. New England Mutual Life Ins. Co.*, 305 Pa. 505, 158 A. 257.

A caveat must be entered. We do not hold that chronic alcoholism is as a matter of law a self-inflicted injury. Our decision is that the evidence which the trial judge found credible justifies the conclusion that the disability suffered by this insured was self-inflicted. This question has been adjudicated in other jurisdictions under variant policies and facts, and differing conclusions have been announced by the courts.[1] It is difficult and unnecessary to decide where the weight of authority lies. The validity of this judgment will rest upon the facts in the record and the soundness of the reasons which impelled it.

Judgments affirmed.

----

[1] *Gaines v. Sun Life Assurance Co. of Canada*, 306 Mich. 192, 10 N. W. 2d 823; *New England Mutual Life Ins. Co. v. Hurst*, 174 Md. 596, 199 A. 822; *Bailey v. Life Ins. Co. of Va.*, 222 N. C. 716, 24 S. E. 2d 614; *Hoskins v. U. S.*, 120 Fed. 2d 464; *Viccioni v. U. S.*, 15 Fed. Sup. 547; *N. Y. Life Ins. Co. v. Riggins*, 178 Okla. 36, 61 P. 2d 543.