## Wagner v. Crucible, Inc.

*Richard G. Spagnolli*, for plaintiff.
*Oran W. Panner*, for defendant.

BARRY, *J.*, January 4, 1978—This memorandum is filed to accompany a non-jury decision entered concurrently.

Plaintiff, a discharged employe of defendant, claims certain benefits which were denied him by defendant. Plaintiff, age 37 at the time of his termination on January 29, 1971, contends he was entitled to: (1) salary continuance benefits under a plan voluntarily initiated by defendant and (2) reimbursement for medical services rendered by Mercy Hospital in the amount of $3,282.60. Plaintiff, although afforded an opportunity to continue hospitalization insurance with Aetna Life and Casualty Company at the time of his discharge, did not do so and contends defendant had a legal obligation to protect him under the circumstances of his discharge.

Plaintiff, who at one time had various executive responsibilities with defendant, testified that he was aware of fringe benefits put into effect by defendant because he was asked to explain them to salaried employes. One of these benefits was the so-called salary continuance plan concerning which he lectured to employes. In the event of disability, he stated, the company promised to continue salary for a period of time based on an employe's length of continuous service with the company. The maximum amount available under this plan was for 32 weeks benefits applicable to employes who had served 15 years and over. Plaintiff was in this category. Defendant called the benefit, a "leave of absence" policy, and in its Exhibit A points out that any grant of benefits under the company's policy was contingent on the recommendation of the "immediate supervisor and final approval of the Department Head or Assistant Department Head." Defendant's Exhibit A also says "no payment shall be made for willful use or unexcused absence from duty." Defendant contends it

was not obligated to make any payments under this policy to plaintiff, since the payments were purely discretionary with the company. Plaintiff argues from his Exhibit 11 entitled "Total Income Protection Plan for Eligible Crucible Salaried Employees" pamphlet (which was never formally adopted by defendant), that page 10 thereof, under "Disability Claims," contains the following statement: "You currently receive salary continuance benefits if you are disabled." Defendant contends that this statement did not really relate to its leave of absence policy. Plaintiff received benefits from the time of termination on January 29, 1971, to June 30, 1971, when defendant discontinued the benefits. It has been stipulated that if the benefits were continued for the full 32 weeks the amount due would be $5,261.

There is no doubt that the real problem here is plaintiff's chronic alcoholism. The record discloses clearly that plaintiff was in bad shape physically and mentally at the time of his discharge. If he had agreed to "take the cure" at that time defendant would undoubtedly have continued the payments. When he didn't defendant felt justified in discontinuing the benefits, noncontributory and voluntary in nature.

Plaintiff testified of his own alcoholism which was compulsive and abyssmal. In the period from July 1971 to December 1971, he stated that alcohol controlled his life, that he drank to oblivion, that he would black out two to four times a week. After his discharge immediately prior to his admission to Mercy Hospital in Pittsburgh he testified his stomach and legs were swollen, he couldn't take water and that he was vomiting blood. He was subsequently admitted to St. Joseph's Hospital and to

The Gateway Rehabilitation Center (past the period of damages claimed in the complaint). Plaintiff's wife testified to the terrible effects of his alcoholism. So did Abraham Twerski, M.D., a physician at St. Francis Hospital in Pittsburgh and a psychiatrist, a person who has devoted his life to drug and alcohol addiction. Dr. Twerski testified that alcohol is a prototype of addictive drugs. He had reviewed all the records and was convinced that in January of 1971 plaintiff was suffering from alcholism, was drinking a fifth of whiskey a day at that time and was well into addiction. He stated that it was a typical reaction that an alcoholic would not seek or accept help. He was of the opinion that plaintiff was disabled at the time of his discharge.

Defendant's representatives contended that they made every effort to get plaintiff to accept treatment, that the salary continuance benefits were actually paid for a period of time but that the benefits could not be continued for a self-inflicted disability. Defendant cites Lynch v. Mutual Life Insurance Co. of New York, 159 Pa. Superior Ct. 488, 48 A. 2d 877 (1946), for the proposition that recovery by a beneficiary upon policies which provided for payment of benefits should the insured become totally and permanently disabled was justifiably denied on the grounds that the insured's disability was self-inflicted within the meaning of the policy. Also cited are Bailey v. Life Insurance Company of Virginia, 222 N.C. 716 (1943), and Gaines v. Sun Life Assurance Company of Canada, 306 Michigan 192 (1943), which held that alcoholism is not a disease within the meaning of insurance contracts.

The court, however, is of the opinion that this is not a case involving the construction of a compli-

cated insurance contract and its many provisions. The Lynch case, supra, ended with this caveat of the court:

"A caveat must be entered. We do not hold that chronic alcoholism is as a matter of law a self-inflicted injury. Our decision is that the evidence which the trial judge found credible justified the conclusion that the disability suffered by this insured was self-inflicted. This question has been adjudicated in other jurisdictions under variant policies and facts, and differing conclusions have been announced by the courts. It is difficult and unnecessary to decide where the weight of authority lies. The validity of this judgment will rest upon the facts in the record and the soundness of the reasons which impelled it." at page 494.

It is the court's opinion that the testimony of Dr. Twerski was completely credible, that this plaintiff was afflicted with a disease, perhaps caused in part by plaintiff's necessary socializing on behalf of defendant's business, and that he was unable to help himself at the time of this disability. Furthermore, the court is of the opinion that benefits of this type were disability payments that were a part of the employment contract for non-salaried employes. It is not enough for defendant to say that plaintiff had provided defendant no medical evidence at the time of the discharge to warrant the continuance of benefits. The evidence is overwhelming that defendant's officers and its company physician knew very well what the condition of plaintiff was at the time of his discharge. He had been examined by a company doctor who had urged him to seek help from his own physician. It is clear defendant felt itself justified in refusing further benefits to an alcoholic

after he had refused help. Under all the circumstances in the case the court cannot agree that the refusal of further benefits was proper. On this basis the court has awarded benefits to plaintiff with interest from the time of demand.

The court has rejected the claim, however, for the cost of plaintiff's hospitalization in Mercy Hospital. Plaintiff's bill was $3,282.60. Defendant's obligation here, it is believed, was to pay hospitalization premiums, not the cost of hospitalization. Plaintiff contends he was in no condition to convert the group insurance offered by defendant to a personal policy even though he was admittedly afforded this opportunity. Plaintiff is thus asking for consequential damages, not for an agreed-upon benefit. The court, considering the Lynch case, supra, and the caveat contained therein, quoted above, is of the opinion that plaintiff had the duty to mitigate damages and to make ordinary provisions for his own well being, despite his disability. This portion of plaintiff's claim, as the decision discloses, is rejected.