FRANCES MADDOX v. COLONIAL LIFE AND ACCIDENT INSURANCE COMPANY

No. 8030DC411

(Filed 21 October 1980)

Insurance §52– selected risk accident policy – shooting self-inflicted – recovery reduced to one-fifth

In an action to recover the face amount of a selected risk accident policy, the trial court erred in entering summary judgment for plaintiff beneficiary where the policy in question included a suicide exclusion and a reduction clause to one-fifth of the amount otherwise payable for death resulting from "shooting self-inflicted"; deceased died from an unintentional gunshot wound; the term "shooting self-inflicted" included an accidental shooting of insured by himself; and the plaintiff beneficiary was therefore entitled to only one-fifth of the face amount of the policy.

Judge HILL dissenting.

APPEAL by defendant from *McDarris, Judge.* Judgment entered 5 February 1980 in District Court, SWAIN County. Heard in the Court of Appeals 28 August 1980, at Waynesville, North Carolina.

Defendant issued a "Master Select Risk Accident Policy," insuring Carter Maddox for loss of life. The policy was in effect at the time of Maddox's death on 26 October 1977.

The deceased and his son, Keith Maddox, were at a water tank or reservoir, where they were doing some work. Keith was carrying a .41-caliber magnum Ruger pistol in a holster. When he started to work at the tank, Keith handed the holstered pistol to Carter Maddox. Thereafter, Keith heard a sound, looked around and saw his father sitting or lying on a bank. He had been wounded by a bullet from the pistol. The pistol was found a short distance from Carter Maddox with the muzzle end of the holster torn out by the discharge of the pistol. Carter Maddox died as the result of the gunshot wound. No other

persons were in the vicinity at the time of the incident. The parties agree that the pistol could fire if it were dropped on the ground while holstered.

Plaintiff contended that upon this evidence she was entitled to receive the face amount of the policy, $3,750. Defendant contends that plaintiff's claim is governed by the reduction clause of the policy, and that plaintiff is only entitled to recover $750. Defendant tenders that amount.

Both plaintiff and defendant filed motions for summary judgment. After hearing, the court denied defendant's motion and entered summary judgment for plaintiff in the sum of $3,750. Defendant appeals.

*Holt, Haire & Bridgers, by R. Phillip Haire, for plaintiff appellee.*

*Womble, Carlyle, Sandridge & Rice, by Allan R. Gitter and James M. Stanley, Jr., for defendant appellant.*

MARTIN (Harry C.), Judge.

This appeal requires us to construe the insurance contract in question. In so doing, any ambiguity arising from the policy must be resolved in favor of the insured and against the company that drafted the instrument. *Trust Co. v. Insurance Co.*, 276 N.C. 348, 172 S.E. 2d 518 (1970). An ambiguity arises in a policy when "in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions for which the parties contend." *Id.* at 354, 172 S.E. 2d at 522. The meaning of language used in an insurance policy is a question of law. *Trust Co., supra.* The policy must be construed in its entirety and resort may be had to other portions of the policy in order to determine the meaning of a specific phrase or section. The policy should be so construed as to harmonize it as a whole, where possible. *Id.* An insurance contract is to be interpreted in the same manner as contracts generally, and unambiguous terms are to be given their usual, ordinary and commonly accepted meanings. *Motor Co. v. Insurance Co.*, 233 N.C. 251, 63 S.E. 2d 538 (1951); *Brown v. Insurance Co.*, 35 N.C. App. 256, 241 S.E. 2d 87 (1978). *See generally* 43 Am. Jur. 2d Insurance § 263 (1969).

The portions of the policy requiring resolution are:

EXCEPTIONS AND REDUCTIONS

The insurance under this policy shall not cover: (a) suicide while sane or insane; ...

. . . .

For death covered by the provisions of this policy, where it results from ... shooting self-inflicted, ... the amount payable shall be one-fifth the amount otherwise payable for accidental death ....

We do not find any ambiguity in the provisions of the policy that are in dispute. Nor are they irreconcilable. To the contrary, we find the two provisions to be in harmony. Bear in mind that this is a selected risk policy. Deaths resulting from suicide create a higher risk to the insurer and therefore are excluded from coverage. Additionally, certain other risks that are covered, such as gunshot wounds, are deemed by the company to be greater than others; the amount payable for death from these causes is one-fifth of the amount otherwise payable for accidental death.

Clearly, there are only two ways that one can shoot oneself with a pistol, causing death: (1) intentionally, that is, suicide, and (2) accidentally. Under the provisions set out above, where the shooting is intentional the policy does not afford any coverage. Where the shooting is accidental, the award is reduced to one-fifth of the amount otherwise payable.

Counsel for plaintiff would have us adopt the view that the phrase "shooting self-inflicted," in the above reduction provision, applies only to intentional shootings by the insured. To do so would negate the suicide clause and create an ambiguity between the two provisions. We refuse to adopt this reasoning.

Plaintiff relies upon *Lynch v. Mutual Life Ins. Co.* of New York, 159 Pa. Super. Ct. 488, 48 A. 2d 877 (1946), and *National Security Insurance Co. v. Ingalls*, 56 Ala. App. 498, 323 So. 2d 384 (1975). In *Ingalls* the Alabama court in interpreting the phrase "shooting accidentally self-inflicted" held it meant "accidentally shooting oneself." If the injury was caused in that manner, plaintiff could only recover twenty-five percent of the amount otherwise payable. The court held that the injury to plaintiff was caused by a cotton bar falling on a shotgun in his auto-

mobile, causing it to discharge, and that this was not "accidentally shooting oneself" and therefore plaintiff's claim was not subject to the reduction clause. The Alabama court further stated that to "shoot oneself" connoted that the "injury results from direct, immediate, and conscious employment of a firearm by the victim," thus distinguishing Ingalls's injury in which he did not have the shotgun in his hand. 323 So. 2d at 386. Although *Ingalls* was not concerned with the reconciliation of a suicide provision with a reduction provision, our result is consistent with the Alabama court's finding that a "shooting accidentally self-inflicted" means "accidentally shooting oneself." We do not find *Ingalls* helpful to plaintiff's position.

In *Lynch* the court was concerned with an exclusion for "self-inflicted injury" and held it meant one that the insured willed or intended. The court was applying the exclusion to the question whether chronic alcoholism was a self-inflicted injury. In affirming the judgment for the defendant insurance company, the court held if the *result* (alcoholism) was intended, it was a self-inflicted injury, whereas in our case we are concerned with whether the *event* that caused the result was intentional or accidental. The exclusion in *Lynch* is more similar to the suicide exclusion in our case than the reduction provision. Again, *Lynch* was not concerned with the relation of a suicide provision and a reduction clause and we do not find it persuasive or helpful. Nor do we find *Parker v. Ins. Co.*, 188 N.C. 403, 125 S.E. 6, 39 A.L.R. 1085 (1924), analogous. There the Court was concerned with construing a suicide provision as to whether accidental death at the hand of the insured was included in the meaning of death by self-destruction.

Although we have not found any North Carolina cases directly in point, our holding is in accord with decisions in other jurisdictions. *Colonial Life & Acc. Ins. Co. v. Cook*, 374 So. 2d 1288 (Miss. 1979), involved a policy with a reduction clause identical to the one sub judice and issued by the same company. Deceased was getting into his truck with a pistol tucked into his belt. The gun discharged, fatally wounding him. There was no other evidence or contention as to cause of death. While the court did not analyze the policy with respect to the suicide and reduction clauses, it held plaintiff was only entitled to one-fifth of the amount otherwise payable under the circumstances of the case and the express terms of the policy.

Maddox v. Insurance Co.

In *Lemmon v. Massachusetts Protective Ass'n*, 53 F. 2d 255 (N.D. Okla. 1931), the court was concerned with a policy containing a suicide exclusion and a reduction clause to one-fifth of the amount otherwise payable for death resulting from "shooting self-inflicted." Deceased died as a result of an unintentional gunshot wound. The court held the term "shooting self-inflicted" included an accidental shooting of insured by himself and affirmed the award of damages of one-fifth the amount otherwise payable. The court analyzed the policy with respect to the suicide and reduction clauses, held they were plain and unambiguous, and as such, it was the duty of the court to carry out the contract as actually made by the parties.

We find both *Cook* and *Lemmon* to be indistinguishable from the case at bar and strong authority in accord with our holding. The trial court erred in denying defendant's motion for summary judgment and in granting plaintiff's motion. The actions of the trial court are reversed and the case is remanded to the District Court of Swain County for the entry of summary judgment in favor of defendant.

Reversed and remanded.

Judge CLARK concurs.

Judge HILL dissents.

Judge HILL dissenting.

I dissent from the position taken by the majority. The trial court's action denying defendant's motion for summary judgment and entering summary judgment for plaintiff should be affirmed. Like the majority, I believe it is clear that "there are only two ways that one can shoot oneself with a pistol, causing death ...." A person can shoot himself intentionally; that is, commit suicide. A person can also self-inflict a gunshot wound so that the result — death — is an accident, although not due to accidental means. However, in a situation where no third party is involved, there is still a third way a person can die from a gunshot wound. A person can die from an accidentally inflicted gunshot wound. *See Ingalls, supra*, at p. 385.

Unlike the majority, I find the reasoning in *Ingalls* to be helpful. It does not concern me that the case only deals with a reduction clause because, given the reasoning set forth in *Ing-*

*alls*, the clauses in the case sub judice would be consistent with each other.

The *Ingalls* court states at p. 386 that "[a]n injury is 'self-inflicted' only when the insured wills it or intends to cause it." "[T]hat which is unexpected and unintended, happening by chance" is "accidental." *Id.* p. 386. As the majority correctly points out, recovery was not reduced in *Ingalls* because the injury, "while accidental, was not self-inflicted." Injury did not result from the "direct and knowing employment of a firearm, but rather from the inadvertent application of an intervening force . . . ." *Id.* p. 386.

Like the majority, I believe the policy in the instant case makes it clear that where death results from suicide, coverage is excluded. Like the majority, I feel compelled to harmonize the exclusion and reduction clauses. Unlike the majority, I do not believe that, under the terms of the policy, "[w]here the shooting is accidental [coverage] is reduced . . . ."

The policy states that it "provides indemnity for loss of life . . . caused by bodily injuries effected through accidental means" except as limited by the terms of the policy. *Only* when the accidental death is caused by a self-inflicted shooting would coverage in this case be reduced.

The evidence is clear. Carter Maddox died as the result of a gunshot wound. The defendant has not shown, however, that the wound was self-inflicted; and, in view of the fact that the pistol was still holstered when it discharged, I believe it is clear that the pistol discharged by accident.

I believe it is clear that Carter Maddox died accidentally and that his death did not result from a "direct and knowing employment of a firearm." *Id.* p. 386. The policy must be construed in its entirety and summary judgment for plaintiff affirmed.